### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

ANGEL ALVARADO,

      Plaintiff,

vs.                                        No. CIV 06-0807 JB/ACT

MICHAEL W. WYNNE, Secretary,
DEPARTMENT OF THE AIR FORCE,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Revised Opening Brief (Judicial Review of U.S. Merit Systems Protection Board Decision), filed March 31, 2008 (Doc. 21).  The Court held a hearing on February 5, 2009.  The primary issue is whether the Merit Systems Protection Board ("MSPB") erred in determining that substantial evidence supported the Air Force's charge of "insubordinate defiance of authority" against Plaintiff/Appellant Angel Alvarado, which formed the basis of Alvarado's removal from federal service.  Because the Court concludes that there is sufficient evidence in the record to support the MSPB's findings, the Court affirms the MSPB's dismissal of Alvarado's claim.

### FACTUAL BACKGROUND

Alvarado worked for fifteen years as a Mobile Equipment Repair Inspector at Kirtland Air Force Base.  See Alvarado Jr., Angel v. Department of the Air Force, MSPB Record at 26, 32 ("MSPB Record").  As an inspector, he was responsible for assuring that all "the vehicles maintained and serviced by the [Logistics Readiness Squadron] left [the] facility in a safe and serviceable condition pursuant to all pertinent technical orders and [Air Force] instructions."  Id.

at 9.  The Air Force alleges that Alvarado's position was the "last line of defense" to ensuring that the vehicles which left the facility were operationally safe.  Id. at 10.

Both parties acknowledge that the Air Force had been using a quality-control system, a method designed to ensure that employees were conducting satisfactory work, from the beginning of Alvarado's employment.  See id. at 1798 (Alvarado) (testifying that a quality-control system has been in place for as long as he worked at Kirtland Air Force Base); id. at 1649 (Logistics Readiness Squadron Superintendent)(testifying that "[t]he United States Air Force has been using . . . the quality control program from its inception").  This quality-control system afforded technicians and mechanics different amounts of allowable rejects, or mistakes, yet did not apply to Alvarado, who was an inspector.  See id. at 1651 (Logistics Readiness Squadron Superintendent)(stating that, under the former quality-control system, some positions, such as technicians, were allotted four rejects, while other positions were allowed six rejects); id. at 1800 (Alvarado)(testifying that, as the inspector, he was not held accountable until the change in the quality-control system in 2000).

On April 27, 2000, approximately thirteen years into Alvarado's employment as a Mobile Equipment Repair Inspector, the quality-control system was changed to the current "reject system." Id. at 44, 1800.  Both parties acknowledge that the reject system allowed twelve rejects per year whereas the former qualify-control program allowed six rejects per year.  See id. at 44.  The Air Force alleges that the increase in the number of allowable rejects was a result of the ever changing vehicle designs and the complexity of current vehicles, and that the change was made to "afford employees greater flexibility in the evaluation of their performance."  Id.  Another difference between the reject system and the former quality-control system is that the reject system applied to Alvarado.  See id. at 1800.  In response to changes in the quality-control system, Alvarado, through his union, sent a letter demanding negotiation of the reject system because he felt that it did not

comply with established Performance Management System requirements.  See id. at 48.  Alvarado testified that this letter went unanswered.  See id. at 1800.

Following the change in the quality-control system, Alvarado incurred twelve rejects in a two-and-a-half month period, and was placed on a thirty-day performance-opportunity period because the reject system allowed only twelve rejects a year.  See id. at 44-45.  The purpose of the opportunity period was to allow Alvarado to demonstrate that he could perform acceptably.  See id. Alvarado's supervisor, Randy Rettinger, testified that during the first three weeks of the opportunity period Alvarado performed superbly.  See id. at 1588.  As the opportunity period reached its close and Rettinger was unavailable to inspect Alvarado's work, however, another supervisor, Michael Rariden, found six defects during an inspection of a vehicle that Alvarado had passed after a quality inspection.  See id. at 54.  These discrepancies were: (i) the annual opacity test was not circled; (ii) the paint-battery box was not initialed; (iii) the battery terminals were corroded; (iv) the battery box was not painted; (v) the windshield washer was inoperative; and (vi) the ether bottle was empty. See id.  After this inspection, Rariden decided that Alvarado should be removed, because he continued to incur rejects, as shown by the twelve rejects incurred before the opportunity period, and the six rejects incurred during the opportunity period.  See id. at 157.  Rariden reached this conclusion after considering the nature and seriousness of the offense, Alvarado's job level, his past disciplinary record and work record, his potential for rehabilitation, and the adequacy of alternate sanctions.  See id. at 157-60.  Alvarado was sent a Notice of Proposed Removal that charged him with the twenty-four discrepancies, including the rejects from the months before the opportunity period and the rejects incurred during the opportunity period.  See id. at 37.  The twenty-four discrepancies were:

1) painted over pintle hook decal, 2) loose left arm rest, 3) no opacity test was

performed, 4) leaking coolant, 5) broken L/F headlamp bezel, 6) unservicable alternator belt, 7) loose left door mirror mount, 8) right door mirror not painted, 9) incorrect bulbs in back up lights, 10) scheduled maintenance checklist missing, 11) unchanged oil filter, 12) missing pintle hook caution decal, 13) empty ether bottle, 14) inoperable windshield washer, 15) annual opacity test not circled, 16) paint battery box not initialed, 17) corroded battery terminals, 18) unpainted battery box, 19) loose pax mirror, 20) loose positive battery cable, 21) loose drivers side mirror, 22) outside dual tire bias ply, 23) hydraulic leak top of cylinder, 24) both differentials not checked.

Id. at 42-43.

   At the conclusion of the termination process, Alvarado was removed from his position. See id. at 26.  The removal paperwork listed several charges against him, including insubordinate defiance of authority, which was based on Alvarado's alleged continued failure to comply with the reject system.   See id.  The other charges were misuse of government equipment, careless workmanship, and certification of inaccurate information on an inspection checklist.   See id. Alvarado believed that he had been unfairly terminated and instituted this ligation.  See id. at 3.

   Alvarado was terminated on October 21, 2002.  See id. at 1846.  He appealed his removal, alleging that the termination constituted retaliation for protected union and equal employment-opportunity activity and discrimination based on his national origin.  See id. at 1568.  As both Administrative Judge Jack E. Salyer and the MSPB subsequently found, the first charge against Alvarado was best characterized as "insubordinate defiance of authority."  Id. at 1851, 1943. Alvarado's first hearing was before Administrative Judge Patricia M. Miller on May 12, 2003.  See id. at 1086.  On August 22, 2003, Administrative Judge Miller issued an Initial Decision in favor of Alvarado.  See id. at 778.  She concluded that the charges were not sufficiently detailed to allow Alvarado to make an informed reply and reversed the action because of  harmful procedural error. See id. at 781.  The Air Force submitted a petition for review, which the MSPB granted.  See id. at 944.  The MSPB issued a decision on September 28, 2004, vacating the Initial Decision because the

-4-

record at law did not support Administrative Judge Miller's findings, and remanding the appeal for further adjudication.  See id. at 1567, 1571, 1573.

The case was remanded to Administrative Judge Salyer, and a second evidentiary hearing was held on January 31, 2005.  See id. at 1576.  On August 22, 2005, Administrative Judge  Salyer issued an Initial Decision overturning the Air Force's termination of Alvarado because the Air Force failed to prove the charge of insubordinate defiance of authority by a preponderance of the evidence. See id. at 1846, 1851.  The Air Force submitted another petition for review, and Alvarado filed a cross-petition for review.  See id. at 1936.  The MSPB granted the Air Force's petition for review on August 1, 2006, reversing -- for the second time -- a MSPB Administrative Judge.  See id. at 1939.  The MSPB found that Administrative Judge Salyer did not properly consider all the evidence and that he erred by not sustaining the charge of insubordinate defiance of authority.  See id. at 1950-51.  Upon a review of the record, the MSPB sustained the charge of insubordinate defiance of authority.  See id. at 1959.  The Air Force acknowledged that the misuse-of-government equipment-charge was relatively unimportant, and that it would have removed Alvarado solely on the insubordinate defiance of authority charge.  See id.  Thus, the MSPB found that the misuse-of-government-property charge did not have an impact on the outcome of the case and did not further consider the charge.  See id.

## PROCEDURAL BACKGROUND

This appeal followed.  This case is an appeal from the MSPB's decision in favor of the Air Force.  This proceeding is a "mixed-case" appeal from the MSPB's opinion, involving both the appeal from the MSPB and a claim for discrimination.  Williams v. Rice, 983 F.2d 177, 179-180 (10th Cir. 1993)("Where a petition for review of a MSPB decision involves both discrimination and other claims it is considered a 'mixed case.'  On the discrimination claim, the petitioner 'shall have

the right to trial de novo by the reviewing court.'  The other, non-discrimination claims, however, are reviewed on the administrative record.")(citations omitted).  This opinion considers Alvarado's non-discrimination claims.  His discrimination claims remain pending with the Court until the non-discrimination claims are resolved.

Alvarado has submitted a revised opening brief.  This brief references the MSPB record as the MSPB provided the record to Alvarado's counsel in response to a Freedom of Information Act ("FOIA") request.  Alvarado has lodged that record with the Court in the form of a single compact disk containing images of all documents provided to his counsel in response to the FOIA request.  Alvarado represents that a hard copy of the MSPB record is available for inspection and review at his counsel's offices.

Alvarado's brief argues that the Air Force failed to prove "insubordinate defiance of authority" because the Air Force did not demonstrate that Alvarado acted with defiance or insolence when he disobeyed his superior's orders.  Plaintiff's Revised Opening Brief (Judicial Review of U.S. Merit Systems Protection Board Decision) at 4, filed March 31, 2008 (Doc. 21) ("Plaintiff's Brief").  He contends that the record does not support the MSPB's conclusion that Alvarado demonstrated defiance or insolence.  See id. at 8.  Alvarado also argues that the MSPB failed to appropriately apply the Douglas factors -- which are factors the MSPB applies to determine whether an agency's judgment was reasonably exercised -- to the Air Force's decision to remove him.  See Plaintiff's Brief at 5; Douglas v. Veterans Admin., 5 M.S.P.R. 313, 332 (MSPB 1981).  These factors include the nature and seriousness of the offense, the employee's past disciplinary record, the type of employment, the potential for rehabilitation, and mitigating circumstances.  See Douglas v. Veterans Admin., 5 M.S.P.R. at 332-33 (other factors include the employee's work record, the effect of the offense on the ability to perform, the notoriety of the offense, and the extent of the employee's

notice).  Alvarado argues that the deciding official did not properly consider the <u>Douglas</u> factors.

<u>See</u> Plaintiff's Brief at 10-11 (stating "[h]ere, however, the record is devoid of and [sic] Douglas

factors worksheet signed by the deciding official, or indicating the degree to which he considered

Douglas").  He states that, even if he committed the alleged misconduct, the penalty of termination

is not within the parameters of reasonableness and should be mitigated.  <u>See</u> <u>id.</u> at 12.  In conclusion,

he asks the Court to set aside the MSPB's decision.  <u>See</u> <u>id.</u> at 14.

In response, the Air Force argues that Alvarado's failure to submit a properly certified copy

of the administrative record should result in the Court's summary affirmation of the MSPB decision.

<u>See</u> Defendant Secretary of the Air Force's Response to Plaintiff's Opening Brief Concerning

Judicial Review of Merit Systems Protection Board Decision at 4, filed May 19, 2008 (Doc. 25)

("Defendant's Brief").  Alternatively, the Air Force argues that the Court should affirm the MSPB's

decision because the decision is in accordance with law and is supported by substantial evidence.

<u>See</u> <u>id.</u> at 4.  The Response sets forth the evidence upon which the MSPB relied, and concludes that

the MSPB properly used circumstantial evidence to determine Alvarado's intent and the purpose of

his conduct.  <u>See</u> <u>id.</u> at 10.  It also states that the MSPB "cited to the testimony it relied on to make

its decision thereby demonstrating that evidence did exist in the record, Plaintiff just disagrees with

the Board reliance on it."  <u>Id.</u> at 12.  The Air Force also argues that the MSPB's decision was not

arbitrary or capricious because there is a rational basis supporting the MSPB's decision.  <u>See</u> <u>id.</u>  at

4.  The Response points out that Alvarado argues only that removal based on a charge of misuse of

government property is not appropriate; however, the only charge the MSPB sustained was the

insubordinate defiance of authority charge.  <u>See</u> <u>id.</u> at 13.  The Air Force argues that the MSPB

properly found that the Air Force's penalty of removal for the charge of insubordinate authority was

reasonable after it examined the relevant factors the deciding official considered in the removal

decision.  See id. at 13, 15.  In conclusion, the Air Force asks the court to affirm the MSPB's

decision.  See id. at 15.

A hearing on the appeal was held on February 5, 2009.  At the hearing, Alvarado's attorney,

Dennis Montoya, argued that the evidence did not meet the definition of willful defiance.  See

Transcript of Hearing at 7:24-25 (taken February 5, 2009)(Montoya)("Tr.").[1]  He also argued that

the Douglas factors failed to address the misuse of government property charge and that the penalty

of removal was outside the bounds of reasonableness.  See Tr. at 8:21-24, 9:2-10 (Montoya).  The

Court asked Mr. Montoya why he submitted a FOIA record instead of a certified copy of the record,

to which Mr. Montoya replied that, when he requested a certified copy of the record from the MSPB,

he was told that to get the record he was required to submit a FOIA request.  See Tr. at 9:23-10:3

(the Court), 10:9-11 (Montoya)("We contacted the MSPB and they said well if you want the record

the way to get it is to send us a [FOIA] request, to which I responded but this is an appeal in district

court and they said that's what we require, that's the way it's done.").  At the hearing, the counsel

for the Air Force, Michele Forte, argued that the MSPB had followed established precedent in

sustaining the charge of insubordinate defiance of authority and had cited to evidence in the record

that supported the charge.  See Tr. at 12:16-19 (Forte).  She concluded by stating that there was no

reason for the Court to disturb the MSPB's decision.  See id. at 12:21-21 (Forte).

## LAW REGARDING APPEAL OF MSPB DECISIONS

The MSPB provides recourse for governmental employees who have suffered adverse-

employment actions.  The MSPB reviews the appeal of an adverse action to ensure that the agency's

judgment was properly exercised within tolerable limits of reasonableness.  When a party appeals

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

-8-

the MSPB's decision to a federal court, the court will conduct a narrow review of the MSPB's decision.  The court will reverse the MSPB's decision only if it is unsupported by substantial evidence, if it is obtained without procedures required by law, or if it is arbitrary.

1.     **Standard of Review.**

When employees appeal an adverse employment action to the MSPB, the MSPB may either hear the case or refer the case to an Administrative Law Judge.  Both administrative bodies perform the function of ensuring that the agency's judgement was properly exercised within tolerable limits of reasonableness.  If the agency's judgment was properly exercised, the administrative body should affirm the action.  If the MSPB referred the case to an Administrative Law Judge, the parties may appeal the Administrative Law Judge's Initial Decision to the MSPB.  When the MSPB reviews an Initial Decision, it may give the Administrative Law Judge's findings only so much weight as the record and the reasoning warrants.  Upon an appeal of the MSPB's decision, a federal court will conduct a narrow review of the decision. The court will reverse the MSPB's decision as unsupported by substantial evidence if a reasonable mind could not find that the evidence adequately supports the decision, and it will reverse the MSPB's decision as arbitrary if the decision does not have a rational basis in law.

Congress has provided government employees with a statutory right to appeal an agency's penalty determination to the MSPB.  See 5 U.S.C. § 7701(a).  When a case is appealed to the MSPB, the MSPB may either hear the case or refer the case to an Administrative Law Judge.  See id. § 7701(b)(1).  If the case is referred to an Administrative Law Judge, the Judge's decision is final unless a party appeals the decision to the MSPB within 30 days of the decision.  See id. § 7701(e)(1).

The MSPB deferentially reviews the agency's determination and ensures that the

determination is within the bounds of reasonableness.  The MSPB must exercise appropriate deference "to the primary discretion which has been entrusted to agency management, not to the Board."  Douglas v. Veterans Admin., 5 M.S.P.R. at 328.  The MSPB's principal role is to ensure that "managerial judgment has been properly exercised within tolerable limits of reasonableness." Id. at 329.   To determine whether the agency's managerial discretion has been properly exercised within tolerable limits of reasonableness the MSPB should consider whether the agency weighed several factors known as the Douglas factors, which include mitigating factors, seriousness of the offense, past disciplinary record, and type of employment. See id. at 332-33.

The MSPB uses a similar form of review when it finds that not all of the charges against the employee are sustained.  When not all of the charges are sustained, the MSPB "may not independently determine a reasonable penalty."  Gray v. U.S. Postal Serv., 97 M.S.P.R. 617, 621 (MSPB 2004).  Instead, "the Board may mitigate to the maximum reasonable penalty so long as the agency has not indicated either in its final decision or during proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges."  Lachance v. Devall, 178 F.3d 1246, 1260 (Fed. Cir. 1999); Gray v. United States Postal Serv., 97 M.S.P.R. at 621.  However, "[w]hen an agency brings several charges, some more and some less egregious, and the more egregious charges are sustained, it is reasonable to presume, absent agency indications to the contrary, that the agency itself would have imposed the same penalty on the basis of the sustained charges that it chose on the basis of the combined charges."  Tisdell v. Department of Air Force, 94 M.S.P.R. 44, 46 (MSPB 2003)(citations omitted).  Thus, the MSPB "may impose the same penalty imposed by the agency based on a justification of that penalty as the maximum reasonable penalty after balancing the mitigating factors."  Lachance v. Devall, 178 F.3d at 1260; Gray v. United States Postal Serv., 97 M.S.P.R. at 621.

The MSPB does not deferentially review the appeal of an Initial Decision unless questions of credibility are presented.  Instead, when the MSPB reviews the appeal of a case that it referred to an Administrative Law Judge, it is free to substitute its own determinations for the Judge's determinations in the Initial Decision, "giving the presiding official's findings only so much weight as may be warranted by the record and by the strength of the presiding official's reasoning." Weaver v. Department of Navy, 2 MSPB 297, 298 (1980).  Because demeanor evidence cannot be fully reflected in a written transcript, however, the MSPB must give deference to the assessment of the presiding official who observed the witnesses when questions of credibility are presented.  In undertaking the review, the MSPB must recognize that demeanor evidence cannot be fully reflected in a written transcript.  See id. at 298-99.

When a party appeals the MSPB's decision to a federal court, the court conducts a narrow review of the decision.  The court will set aside the MSPB's decision if it is found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3).  When a party appeals the MSPB's reversal of an Administrative Judge, the court reviews the MSPB's decision and ensures the decision's compliance with the statue.  See Vaughn v. United States Postal Service, 2009 WL 635963, *1 (Fed. Cir. Mar. 13, 2009)(slip copy).  Judicial review of a MSPB decision is very narrow, and is limited to a determination whether the decision has a rational basis and is supported by substantial evidence. See Romero v. Department of the Army, 708 F.2d 1561, 1563 (10th Cir. 1983).  Substantial evidence supports the MSPB's decision if it is supported by such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  See Brewer v. United States Postal Service, 647 F.2d 1093, 1096 (Ct. Claims 1981).  The standard of review is not de novo, but rather a

determination whether substantial evidence on the record as a whole supports the MSPB's decision. See id. at 1096.  When a court considers whether the MSPB's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, it cannot substitute its judgment for the MSPB's judgment.  See Wilder v. Prokop, 846 F.2d 613, 619 (10th Cir. 1988).  The court can ensure only that federal law and any required procedures have been followed, and that the MSPB's decision has a rational basis in law.  See id. at 619-20.

### 2.    Charge of Insubordinate Defiance of Authority.

A charge of "insubordinate defiance of authority" requires proof of: (i) the intentional disobedience of an order; and (ii) that such disobedience evince some sort of defiance or insolence. See Bennett v. Department of Air Force, 84 M.S.P.R. 132, 136 (MSPB 1999)("The Board's cases involving a charge of 'insubordinate defiance of authority' construe it as the intentional failure to obey an order combined with defiant behavior").  The MSPB has held that intent may be inferred from circumstantial evidence because there will not often be direct evidence of a state of mind.  See Redfearn v. Department of Labor, 58 M.S.P.R. at 312 (citations omitted).

The first element of this charge, insubordination, is defined as a willful and intentional refusal to "obey an authorized order of a superior, which the superior is entitled to have obeyed." Redfearn v. Department of Labor, 58 M.S.P.R. at 311 (citing Phillips v. General Services Administration, 878 F.2d 370, 373 (Fed. Cir. 1989)).  For example, a charge of insubordination was sustained when an employee did not wear the proper uniform and did not to follow established procedures for recording his working time.  See Garcia v. Veterans Admin., 21 M.S.P.R. 1 (MSPB 1984)(denying petition for review from an Administrative Judge's decision sustaining a charge of insubordination based upon an employee's failure to wear a proper uniform and follow established procedures).  The MSPB has also held that an employee deliberately failed to carry out assigned

work when the employee, a Safety and Occupational Health Specialist at Travis Air Force Base, refused to participate in the preparation for the security assistance visit ("SAV"), and in the inspection itself.  See Shaw v. Department of Air Force, 80 M.S.P.R. 98, 113 (MSPB 1998)(finding that the charge of deliberately failing to carry out assigned work was supported by evidence that the employee refused to answer questions during the SAV and that before the SAV the employee had stated that he did not intend to help prepare for the inspection).

The second element of the charge considers whether the employee engaged in insolent or defiant behavior.  See Redschlag v. Department of Army, 89 M.S.P.R. 589, 603 (MSPB 2001). There are many different circumstances that may amount to defiance or insolence, yet many of these situations are premised on an employee's disrespectful behavior.  See, e.g., Redschlag v. Department of Army, 89 M.S.P.R. at 605 (finding that the agency proved insolent behavior that supported the charge of defiance of authority when the employee refused to comply with a superior's orders).  For example, the MSPB has found that a charge of insolence was proved when an employee scheduled a meeting with his supervisor, left and missed the meeting without informing the supervisor, and made no attempt to account for his absence.  See Hawkins v. Smithsonian Inst., 73 M.S.P.R. 397, 406 (MSPB 1997).

## ANALYSIS

The Court will accept the FOIA record that Alvarado has provided to the Court because in this unique circumstance Mr. Montoya was told that to obtain the record he would have to make a FOIA request.  Upon proceeding to the merits of this case, the Court finds that there is sufficient evidence that Alvarado intentionally incurred rejects and that Alvarado acted with the requisite defiance.  The Court therefore will affirm the MSPB's determination that the Air Force proved the charge of insubordinate defiance of authority.

-13-

I.   **THE COURT ACCEPTS THE RECORD THAT ALVARADO PROVIDED BECAUSE THE AIR FORCE HAS FAILED TO SHOW ANY DISCREPANCIES BETWEEN THE FOIA RECORD AND THE CERTIFIED COPY.**

Alvarado has provided the Court with an administrative record obtained through a request under FOIA.  The Air Force argues that Alvarado's failure to submit a properly certified copy of the administrative record should result in the Court's summary affirmation of the MSPB decision.  See Defendant's Brief at 4.  Although Alvarado's attorney, Mr. Montoya, asked the MSPB for the proper record, the MSPB told Mr. Montoya that the way to obtain the record was through a FOIA request. See Tr. at 10:9-11 (Montoya).  After being informed a FOIA request was the way to obtain the record, Mr. Montoya sent a FOIA request.  See Tr. at 10:13-15 (Montoya).  Although the Air Force argues that the Court should summarily affirm the MSPB's decision because of Alvarado's failure to provide the Court with a certified copy of the record, the circumstance here is unique, because the MSPB told Mr. Montoya that to get the record he would have to submit a FOIA request.  The Air Force has not compared the FOIA record with the certified copy of the record and pointed out any discrepancies to the Court.  The Court will therefore accept the record that Alvarado has provided to the Court.

II.  **THE RECORD SUFFICIENTLY SUPPORTS THE MSPB'S CONCLUSION THAT THE AIR FORCE PROVED THE TWO ELEMENTS OF THE CHARGE OF "INSUBORDINATE DEFIANCE OF AUTHORITY."**

The Court's review of the MSPB's decision is limited to a determination whether substantial evidence on the record as a whole supports the decision.  The Court finds that a reasonable mind could conclude that the evidence in the record reasonably supports the MSPB's determination that the Air Force proved "insubordinate defiance of authority."  The Court will therefore affirm the MPSB's decision as supported by substantial evidence.

A.    **THE EVIDENCE IN THE RECORD SUFFICIENTLY SUPPORTS THE MSPB'S DETERMINATION THAT ALVARADO INTENTIONALLY INCURRED THE REJECTS.**

The MSPB concluded, based on the testimony in the record, that the rejects charged to Alvarado were more than mistakes.  This evidence included the testimony of Rettinger and of Rariden, who stated that the rejects attributed to Alvarado were so obvious that if Alvarado had inspected the vehicle he would have discovered the rejects.  See MSPB Record at 1952-54.  The MSPB also relied on Alvarado's failure to admit or to deny the allegations in his testimony regarding the rejects.  See id. at 1955.  The MSPB found that the testimony in the record amounted to circumstantial evidence that Alvarado intentionally incurred the rejects. See id. at 1953-54, 1957-58.

The record supports the MSPB's determination that the obvious nature of the rejects is proof that the rejects were more than mistakes.  Rettinger and Rariden both testified that the rejects were so obvious that Alvarado would have noticed them had he inspected the vehicles.  See id. at 1953. Rettinger stated that many of the rejects, such as the inoperative windshield-washer system, the empty ether bottle, and the unpainted battery box, were so obvious that they could not be missed if the vehicle was inspected. See id. at 1597-98; id. at 1603 (Rettinger)(stating that the hydraulic leak was obviously not operationally checked during the inspection).  Rariden testified that the obvious nature of many of the discrepancies, for example, the loose passenger side mirror and the loose battery cable, indicated that Alvarado did not take the time to look at the vehicle.  See id. at 1668; see id. at 1662 (Rariden) (testifying that several rejects were so obvious that anyone would have noticed them had they looked at the vehicle).  When an object is described as obvious, it may also be characterized as unmistakable and prominently apparent.  See W. Burton, Burton's Legal Thesaurus at 376 (3d ed. 1998).  By definition, an object that is obvious cannot be mistakenly

-15-

missed.  If the rejects were obvious, a precursory inspection should have revealed the rejects.
Because Alvarado did not notice the rejects, a reasonable person might infer that he did not inspect
the vehicles or that he ignored the rejects.  A reasonable mind could therefore conclude that the
rejects attributed to him were intentional and were more than mistakes.

The record also supports the MSPB's determination that Alvarado's failure to admit or deny
faulty inspection of the vehicles is proof that the rejects were more than mistakes.  Part of
Alvarado's testimony was directed at addressing the rejects attributed to him.  See id. at 1769-72.
When he was asked about the reject regarding the empty ether bottle, he stated that the ether bottle
should not have been kept full in summer months such as July, the month he inspected the vehicle.
See id. at 1769.  In response to a question regarding the validity of the leaking coolant reject,
Alvarado asserted that anyone could spill when they were pouring coolant. See id. at 1771.  He
never admitted or denied, however, conducting faulty inspections at any point in his testimony.
Alvarado's failure to contest the allegations is circumstantial evidence that he was intentionally
insubordinate.  See Redfearn v. Department of Labor, 58 M.M.P.R. at 312-13 (stating that the
agency established by a preponderance of evidence that the employee was intentionally
insubordinate because, aside from the employee's general denial that she was insubordinate, she did
not contest that she had failed to follow instructions).  As in Redfearn v. Department of Labor,
where the MSPB found that the failure to deny allegations constituted evidence that established
intentional insubordination, in this case, although Alvarado generally denied that he was
insubordinate, his failure to contest the twenty-four rejects constitutes evidence that helps establish
intentional insubordination.  Alvarado's testimony, or rather lack thereof, is evidence that a
reasonable person might accept as adequate to support the conclusion that the rejects were more than
mistakes.

The testimony of Rariden, of Rettinger, and of Alvarado is evidence that reasonably supports the MSPB's decision.  The obvious nature of the rejects, and Alvarado's failure to contest the twenty-four rejects attributed to him, might lead a reasonable person to conclude that the rejects were more than mistakes.  The Court finds that the record contains evidence which supports the MSPB's conclusion that the rejects were more than mistakes.

**B.    THE EVIDENCE IN THE RECORD SUFFICIENTLY SUPPORTS THE MSPB'S DETERMINATION THAT ALVARADO ACTED DEFIANTLY.**

The MSPB concluded that Alvarado was defiant because he was dissatisfied with the reject system and because his performance was lacking only when he thought his work was not monitored. The MSPB found that Alvarado's request that the Air Force make changes in the reject system in his demand to bargain letter, and his insistence that the Air Force failed to properly bargain over the changes to the reject system, showed Alvarado's disagreement with the Air Force's requirements and his decision not to adhere with them. See id. at 1958.  The MSPB also relied on evidence that Alvarado performed well during the performance opportunity period, but did not perform well when Rettinger was not available to monitor his work carefully. See id. at 1958.  This evidence showed that, although Alvarado was aware of the Air Force's requirements and was able to perform the requirements when he knew he was being supervised, he chose not to perform the requirements with which he disagreed when he thought he would not get caught. See id. at 1958.  The demand to bargain letter and the testimony regarding the opportunity period supported the MSPB's conclusion that Alvarado was defiant.  See id. at 1958-59.

The evidence in the record supports the MSPB's determination that Alvarado acted defiantly. This evidence is comprised of several things: (i) the demand letter to bargain about the reject system implemented in 2000; (ii) Alvarado's testimony regarding the reject system; and (iii) testimony

regarding Alvarado's performance in the opportunity period.

The letter demanding negotiation of the reject system and Alvarado's testimony show that Alvarado disagreed with the implementation of the current reject system and disliked the system. The demand to bargain letter requested a negotiation over the use of the reject system and submitted several proposals for negotiation.  See MSPB Record at 48.  These proposals included a proposal that the reject system should comply with established Performance Management System requirements and a proposal that the reject system must permit the accurate evaluation of job performance on the basis of objective criteria.  See id.  The demand letter also questioned whether the reject system complied with governing statutes or regulations.  See id.  Alvarado's testimony also addressed the newly implemented reject system.  See id at 1798-1800.  He made several statements reflecting his dissatisfaction with the new reject system.  See id.  He thought that the "only reject was supposed to be the work order," instead of the more minor rejects which were included in the current reject system.  Id. at 1799.  When Alvarado was asked whether he had a disagreement with management over the reject system, he stated that he did.  See id.  Alvarado's testimony shows that he disagreed with the operation of the reject system, and the demand letter shows that he believed that there should be changes to the reject system.  Based on this evidence, a reasonable person might conclude that Alvarado disliked the reject system and believed that it should not be in place.

Based on Alvarado's supervisors' testimony, a reasonable mind could find that, because of Alvarado's dislike of the reject system, and belief that the reject system should not be in place, he did not comply with the reject system when he thought that he was unsupervised.  Alvarado's supervisors testified that Alvarado was fully capable of conducting the inspections, yet he did not perform well when he thought he was not supervised.  See id. at 1630, 1678.  Rettinger testified that

Alvarado performed well during the opportunity period when he knew he was being observed and monitored.  See id. at 1630.  Rariden testified that in the first few weeks of the opportunity period Alvarado demonstrated that he had the ability and knowledge to flawlessly inspect vehicles.  See id. at 1678.  Rariden stated, however, that when Alvarado did not think anyone was monitoring him, he incurred six obvious rejects for not inspecting a vehicle properly.  See id.  These six obvious rejects caused Alvarado to fail the opportunity period.  See id.  A reasonable person could draw several conclusions from this testimony.  First, Alvarado had the necessary skills to conduct inspections of the vehicles and was capable of performing well.  Second, although Alvarado had all the necessary skills to conduct inspections, Alvarado made errors when he was unsupervised.  A reasonable person could conclude that Alvarado believed that the reject system should not be in place and was dissatisfied with the reject system.  The evidence of Alvarado's dislike of the reject system could lead a reasonable person to conclude that Alvarado failed to conduct unsupervised inspections properly because he was dissatisfied with the reject system.  The Court therefore concludes that substantial evidence supports the MSPB's determination that Alvarado was defiant.

III.   **THE MSPB DID NOT ABUSE ITS DISCRETION BY REVERSING TWO INITIAL DECISIONS OR BY DETERMINING THAT THE AIR FORCE'S TERMINATION OF ALVARADO WAS A DECISION WITHIN TOLERABLE LIMITS OF REASONABLENESS.**

Alvarado contends that the MSPB abused its discretion by reversing the Initial Decisions of two Administrative Law Judges.  He alleges that the MSPB should have been more deferential to the Administrative Law Judges, because they saw the witnesses and heard the testimony.  He also alleges that the MSPB did not properly apply the standard of review dictated in Douglas v. Veterans Admin. and subsequent decisions.  The issues presented for review on appeal are thus: (i) whether the MSPB abused its discretion by overturning the Initial Decisions of two Administrative Law

Judges who found in favor of Alvarado; and (ii) whether the MSPB correctly decided that the Air Force exercised its judgment within tolerable limits of reasonableness.

### A.   THE MSPB DID NOT ABUSE ITS DISCRETION WHEN IT OVERTURNED THE INITIAL DECISIONS OF ADMINISTRATIVE JUDGE MILLER AND OF ADMINISTRATIVE JUDGE SALYER.

The MSPB did not abuse its discretion in overturning Administrative Judge Miller's Initial Decision because it found that her decision was not supported by the record or the law.  In her Initial Decision, Administrative Judge Miller reversed all of the charges against Alvarado because she found that the notice of proposed removal did not sufficiently inform Alvarado of any of the charges against him and that the notice was thus tainted by harmful error.  See  MSPB Record at 946.  Upon review, however, the MSPB found that these findings were flawed.  See id. at 947-49.  Although Judge Miller concluded that the notice of proposed removal was not self-explanatory, the MSPB found that, despite the use of abbreviations and codes, the meaning was clear, because the date, vehicle registration number, employee number, and particular discrepancy were noted for each specification attributed to Alvarado.  See id. at 947.  The MSPB also found  that Alvarado contended that he did not understand the charges only after Judge Miller raised the issue sua sponte. See id. at 948-49.   Judge Miller's application of the law also concerned the MSPB.  See id. at 949. Her statement that notice should be provided in a self-contained document whose meaning could be discerned without regard to other documents contrasted with the MSPB's previous decisions which stated that the notice requirement was satisfied when the proposal and the attachments taken together were sufficient to provide the employee with an opportunity to make an informed and meaningful reply. See id. at 949.  An Initial Decision that is unsupported by law or the record does not warrant the MSPB's deference; therefore, the MSPB's reversal of the Initial Decision was not an abuse of discretion.  See Weaver v. Department of Navy, 2 MSPB at 298 (stating the MSPB may

give the Administrative Judge's "findings only so much weight as may be warranted by the record and by the strength of the presiding official's reasoning").

The MSPB did not abuse its discretion in overturning the Initial Decision of Administrative Judge Salyer because it found that the record did not support his decision. Judge Salyer concluded that it was inherently improbable that Alvarado would intentionally "slack off." Id. at 1950. Instead, Judge Salyer found that it was more likely that Alvarado's workload was so heavy that the performance standards were unattainable. See id. The MSPB found that the evidence in the record did not support Judge Salyer's conclusions. See id. at 1951. The MSPB stated that Judge Salyer should not have relied on his own beliefs about what a hypothetical employee would or would not do. See id. Instead, he should have analyzed the evidence presented, evaluated the agency's theory of the case on its merits, and determined what Alvarado did or did not do. See id. The MSPB found that the record established that the Air Force proved the charge of insubordinate defiance of authority; thus, the MSPB did not abuse its discretion in reversing Judge Salyer's Initial Decision because it was not required to give deference to his assessments when the evidence did not support them. See Gilliam v. Office of Personnel Management, 91 M.S.P.R. 352, 358 (MSPB 2002) ("[W]here [the presiding official's assessments] are not based on witness demeanor and are contrary to a preponderance of evidence of the record, they do not merit the Board's deference.").

### B. THE MSPB PROPERLY CONCLUDED THAT THE AIR FORCE EXERCISED ITS MANAGERIAL DISCRETION IN REMOVING ALVARADO WITHIN TOLERABLE LIMITS OF REASONABLENESS.

A federal court is limited to a narrow review of the MSPB's determination that the agency exercised its discretion within tolerable limits of reasonableness. See Wilder v. Prokop, 846 F.2d at 619 (stating that judicial review of the MSPB's decision is narrow). For example, when the United States Court of Appeals for the Federal Circuit reviewed the decision of an Administrative

Judge, it found that there was no reversible error in the Administrative Judge's determination that the penalty did not exceed the bounds of reasonableness when the Administrative Judge found that the deciding official considered all of the relevant <u>Douglas</u> factors.  <u>See</u> <u>Stickler v. Department of Defense</u>, 264 Fed. Appx. 886, 888 (Fed. Cir. 2007).  When the MSPB does not sustain all of the charges, it may mitigate the penalty when mitigation presumably is in conformity "with the agency's penalty choice, either because the agency explicitly has made clear its desire that the maximum reasonable penalty be imposed or implicitly has done so by virtue of its silence."  <u>Lachance v. Devall</u>, 178 F.3d at 1260.  <u>Tisdell v. Department of Air Force</u>, 94 M.S.P.R. 44 (MSPB 2003), provides an example of the review the MSPB should conduct when it finds that not all of the charges are sustained, yet when the agency asserts that the sustained charge alone would have warranted removal.  In <u>Tisdell v. Department of Air Force</u>, the Air Force appealed an initial decision that mitigated an employee's removal to a 45-day suspension because not all the charges were sustained.  <u>See</u> <u>id.</u> at 46.  The MSPB reversed the initial decision because, although the agency did not prove all of the charges, the Administrative Judge acted improperly by independently determining a penalty on the sustained charge.  <u>See</u> <u>id.</u> at 52.  Relying on the agency's statement that any of the charges, if sustained, would have warranted removal, the MSPB considered whether the agency considered all of the relevant <u>Douglas</u> factors for the sustained charge.  <u>See</u> 94 M.S.P.R. at 52-53.  The MSPB found that the agency had considered all of the relevant <u>Douglas</u> factors and that the penalty was within the bounds of reasonableness after it balanced the <u>Douglas</u> factors itself.  <u>See</u> 94 M.S.P.R. at 53.  This determination led the MSPB to conclude that the penalty of removal was not unreasonable and to sustain the removal.  <u>See</u> <u>id.</u>

The MSPB properly concluded that the Air Force acted within tolerable limits of reasonableness in terminating Alvarado because it found that the deciding official considered the

Douglas factors in making the decision, and after considering the Douglas factors itself, it found that the agency reasonably exercised its management discretion.  The MSPB did not address the misuse-of-government-equipment charge because it sustained the insubordinate-defiance-of-authority charge.  See MSPB Record at 1959. Thus, the MSPB reviewed the appeal as one in which not all of the charges were sustained.  See id.  In its review, the MSPB determined that the deciding official considered the relevant Douglas factors.  See MSPB Record at 1960-62. One of the facts that the official considered was Alvarado's past disciplinary record, which included his previous suspension for misuse of government property.  See id. at 174.  The MSPB cited testimony that the vehicle-inspection program was very important to ensure that the vehicles were safe.  See id. at 1961.  There was also evidence that the deciding official, Rariden, had considered Alvarado's twenty-seven years of service and his lack of assuming responsibility for his conduct.  See id. at 1961-62.  Rariden testified that he also considered length of service, past performance, notoriety of the offense, mitigating circumstances, and possibility of rehabilitation.  See id. at 1673.  He also stated that  he did not think that rehabilitation would be a possibility because of Alvarado's constant failure to follow instructions, and because the Air Force could not afford to be subjected to a possibly fatal or costly incident.  See id. at 1675-76.  Relying on this testimony, and documentation in the record, the MSPB found that the Douglas factors were weighed.  See id. at 1962.  Also, upon a review of the Douglas factors the MSPB also found that the agency reasonably exercised its management discretion.  See id.

The MSPB properly conducted its review in accordance with case law.  In a situation where not all of the charges are sustained, the MSPB should not independently determine a penalty on the sustained charge.  This principle is particularly applicable in this case, where the Air Force indicated that the insubordinate-defiance-of-authority charge would have warranted removal by itself.  See

-23-

Tisdell v. Department of Air Force, 94 M.S.P.R. at 52 (stating that, when the agency indicates that the sustained charge by itself would have warranted removal, the MSPB should consider only whether the deciding official applied the Douglas factors and whether the penalty is unreasonable). As in Tisdell v. Department of Air Force, where the MSPB found that removal was warranted for the sustained charge when the deciding official had considered the Douglas factors, and when the penalty was not unreasonable, in this case the MSPB found that Rariden had considered the Douglas factors, and that the agency reasonably exercised its management discretion.  The MSPB therefore acted properly in sustaining Alvarado's removal.  Because the MSPB properly performed its function in reviewing the adverse employment action, the Court will not disturb the MSPB's conclusion that the Air Force exercised its discretion within the tolerable limits of reasonableness when it decided to terminate Alvarado's employment.

IT IS ORDERED that the MSPB's decision is affirmed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Dennis W. Montoya
Montoya Law, Inc.
Rio Rancho, New Mexico

*Attorneys for the Plaintiff/Appellant*

Gregory J. Fouratt
  United States Attorney
Michael H. Hoses
  Assistant United States Attorney
Albuquerque, New Mexico

 -- and --

-24-

Michele Alaine Forte
Air Force Legal Operations Agency
Civil Litigation Directorate
Arlington, Virginia

*Attorneys for the Defendant/Appellee*