# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANGEL ALVARADO,

      Plaintiff,

vs.                                         No. CIV 06-0807 JB/ACT

MICHAEL B. DONLEY, Secretary,
Department of the Air Force,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment, filed December 6, 2010 (Doc. 44). The Court held a hearing on January 12, 2011. The primary issues are: (i) whether Plaintiff Angel Alvarado has presented evidence showing material issues of fact establishing a prima-facie case of retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200e to 200e-17; (ii) whether the Defendant had a legitimate nondiscriminatory reason for removing Alvarado from his position; and (iii) whether Alvarado has shown that there is a genuine issue of material fact whether the Defendant's justification is pretext. Because Alvarado has not established a prima-facie retaliation case or shown the Defendant's justification to be pretext, the Court grants the Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

As an initial matter, the Court notes that Alvarado did not specifically controvert the Defendant's statement of undisputed material facts. Local rule 56.1 provides:

> **Statement of Material Facts.** The moving party must file with the motion a written memorandum containing a short, concise statement of the reasons in support of the motion with a list of authorities relied upon. A party opposing the motion must file a written memorandum containing a short, concise statement of the reasons in

opposition to the motion with authorities.  The moving party may file a written reply memorandum.

> The memorandum in support of the motion must initially set out a concise statement of all of the material facts as to which movant contends no genuine issue exists.  The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies.

> A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

D.N.M.LR-Civ. 56.1 (emphasis added).  "[L]ocal rules of practice, as adopted by the district court, 'have the force and effect of law, and are binding upon the parties and the court which promulgated them . . . .'"  Smith v. Ford Motor Co., 626 F.2d 784, 796 (10th Cir. 1980)(quoting Wood Constr. Co. v. Atlas Chem. Indus., Inc., 337 F.2d 888, 890 (10th Cir. 1964), cert. denied, 450 U.S. 918 (1981)).  See Bylin v. Billings, 568 F.3d 1224, 1230 n.7 (10th Cir. 2009)("Although a district court's local rules of practice are technically binding on both the court and the parties, '[c]onsiderable deference is accorded to the [court's] interpretation and application of [its] own rules of practice and procedure.'"  (quoting Smith v. Ford Motor Co., 626 F.2d at 796)(alterations in original)).  In ruling on the purpose of a predecessor rule to D.N.M.LR-Civ. 56.1(b), the United States Court of Appeals for the Tenth Circuit observed:

> Consistent with Fed. R. Civ. P. 56, Local Rule 56.1(b) facilitates the district court's review of summary judgment motions by requiring nonmovants to specifically identify and properly support what nonmovants claim are material disputed facts and point out the movants' alleged facts that they dispute; otherwise, the movants' facts will be deemed admitted.

Smith v. E.N.M. Med. Ctr., 72 F.3d 138, at *4 (10th Cir. 1995).

Alvarado did not specifically controvert the Defendant's undisputed material facts as Local Rule 56 requires.  Alvarado's Response to Defendant's Motion for Summary Judgment, filed December 21, 2010 (Doc. 47)("Response"), does not contain a concise statement of the material facts which he claims are disputed; he has not referred with particularity to those portions of the record upon which he relies to dispute the Defendant's Statement of Undisputed Material Facts; and Alvarado has not identified by number each of the Defendant's facts that he maintains are disputed.  See Response at 3-11.  Consequently, the Court treats Defendant's undisputed facts as admitted.  On the other hand, despite the procedural default, the Court has gone through the briefs and record to determine whether any material issues are, in fact, in dispute.

Similarly, the Defendant did not dispute some of Alvarado's stated material facts.[1]  See

_____

[1] The Court has recently proposed amendments to D.N.M. LR-Civ 56.1(b) that will require the party responding to the motion for summary judgment to number any additional facts and the party moving for summary judgment to specify whether the additional facts are disputed or not in its reply.  A "redline" version of the proposed revisions to the Local Rules of Civil Procedure of the United States District Court for the District of New Mexico is currently available on the Court's website at www.nmcourt.fed.us.  The proposed revisions were posted for public comment.  The period for public comment closed November 24, 2010.  The Court will now consider the comments and further revisions, as necessary.  The proposed version of D.N.M. LR-Civ 56.1(b) states:

> The Memorandum must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which the movant relies.

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.  The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion.  Each additional fact must be lettered and must refer with particularity to those portions of the record upon which

Defendants's Reply Re. Motion for Summary Judgment at 2-7, filed January 7, 2011 (Doc. 49)("Reply").  The Defendant does not specifically controvert Alvarado's Material Facts No. 1-11, 14-16, 19-22, 24-27, or 30.  The Court therefore treats those facts as admitted.  Again, however, despite the procedural default, the Court has carefully reviewed the briefs and record to determine is there are, in fact, material issues in dispute.

## 1.    Alvarado's Background.

Alvarado is "Hispanic/Mexican, and has dark skin coloration."  Response ¶ 3, at 3 (setting forth this fact.  See Reply at 2-7 (not specifically controverting this fact).[2]  Before his removal,

_____

the non-movant relies.

The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection.  Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact.  All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

Proposed revisions to D.N.M. LR-Civ. 56.1(b)(emphasis added).

[2] In Material Fact No. 28, Alvarado alleges that, during the time before and near his removal, he learned from other employees that Alvarado's suprevisor, Michael Rariden, Vehicle Maintenance Flight Chief, had made derogatory remarks about Alvarado's race and had stated that he was going to "work that little Hispanic to the bone," and that "sooner or later I will get that little Hispanic" or "I will get that little Mexican."  Response ¶ 28, at 9 (citing Deposition of Angel Alvarado at 25-26 (taken November 2, 2010), filed December 22, 2010 (Doc. 48-1 ex.1, at 25-26)).  Alvarado's testimony on which he bases this allegation relies on unsworn statements Sargent Harris Brown, an Air Force mechanic, made to Alvarado relaying Rariden's statements.  Apparently recognizing that these statements are hearsay, Alvarado contends that "[t]hese remarks were made at a party at Mr. Rariden's home and in the presence of an African American co-worker, Sargent Harris Brown, who the Plaintiff believes is still in the military and stationed at White Sands or NASA," and that "Brown should be available and able to testify about the incidents at trial."  Response at 11.  The Defendant replies that Alvarado's relaying of Brown's unsworn testimony is inadmissible hearsay not properly before the Court.

Similarly, Alvarado's Material Fact No. 34, relying on Alvarado's deposition testimony, states that Alvarado's supervisors, Joel Neddo and Gabriel Hage, "informed the Plaintiff that they

were instructed by [Rariden] to give Plaintiff lower performance ratings than he deserved, and . . . that Mr. Rariden was out to get him." Response ¶ 34, at 10. The Defendant contends that Neddo's and Hage's statements are inadmissible hearsay. Alvarado did not provide affidavits from Neddo or Hage attesting to what they were allegedly told or instructed to do, or otherwise produce sworn testimony. On the contrary, Alvarado's Material Fact No. 34 is based on second-hand information purportedly conveyed to Alvarado by those two individuals. The Defendant objects to the Court's consideration of this hearsay evidence. Moreover, the Defendant argues, there is no evidence that any of Alvarado's ratings were lowered, because Hage gave Alvarado a rating of superior, the highest rating, and Neddo gave him straight nines, the highest numerical score.

Brown's statements are hearsay. They are unsworn statements "offered in evidence to prove the truth of the matter asserted," Fed. R. Evid. 801(c), namely that Rariden made discriminatory remarks about Alvarado. Alvarado does not dispute that the statements are hearsay or argue that they come within rule 804(d)(2)(D) of the Federal Rules of Evidence. Rule 804(d)(2)(D) excludes from hearsay "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," which are deemed admissions by a party opponent. While Brown was an employee of the Defendant, Alvarado offers no evidence that Brown's statements "concern[ed] a matter within the scope of the agency or employment." It is not enough to show only that a person is an employee for his or her statements to be excluded from the hearsay rules under rule 804(d)(2)(D); Alvarado must also show the statements "concern[ed] a matter within the scope of the agency or employment." Fed. R. Evid. 804(d)(2)(D).

In Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303 (10th Cir. 2005), the Tenth Circuit rejected a plaintiff's contention that her co-worker's statement that he had been promised a promotion was not hearsay under rule 801(d)(2)(D):

> Ms. Jaramillo argues that Mr. Sandoval's statements are non-hearsay admissions of a party opponent because they were "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). In order for a statement to qualify as an admission of a party opponent, the speaker "must be involved in the decisionmaking process affecting the employment action involved." Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003). Mr. Sandoval was not involved in the hiring or promotion process. His alleged statements were therefore outside the scope of his employment and not admissible as statements of a party opponent.

427 F.3d at 1314. In Aliotta v. Nat'l R.R. Passenger Corp., the United States Court of Appeals for the Seventh Circuit stated:

> Thus, we must ask whether the admission was made within the scope of Prendergast's employment. The law in this area is somewhat muddled because the great bulk of cases interpreting what is within an employee's "scope of employment"

deals with employment discrimination.  In those cases, many courts, including the
Seventh Circuit in Williams v. Pharmacia, Inc., 137 F.3d 944, 950-51 (7th Cir.
1998), have held that the declarant must be involved in the decisionmaking process
affecting the employment action involved (i.e., the declarant must be in management
or in the company personnel function) in order for his statements to qualify as having
been made within the scope of his employment.

315 F.3d at 761-62.  See Barner v. Pilkington North America, Inc., 399 F.3d 745 (6th Cir.
2005)("Rule 801(d)(2)(D) is designed to bind the employer where one of its managerial employees
makes a statement within the scope of the employee's duties as a manager."); Fester v. Farmer Bros.
Co., 49 F. App'x. 785, 796 (10th Cir. 2002)("In order for Henshaw's statement to qualify as a party
admission under [rule 801(d)(2)(D)], Henshaw 'must have actually been involved in the decision
to hire or fire the person bringing the discrimination charge.'" (citing Goss v. George Washington
Univ., 942 F. Supp. 659, 662 (D.D.C.1996)));  Hill v. Spiegel, Inc., 708 F.2d 233, 237 (6th Cir.
1983)(noting that "it is necessary . . . to show, to support admissibility, that the content of the
declarant's statement concerned a matter within the scope of his agency"); Williams v. Pharmacia,
Inc., 137 F.3d at 951 (holding that the repetition of statements by women employees other than the
plaintiff was inadmissible under Rule 801(d)(2)(D) because, "[a]lthough the women knew the
outcomes of the managerial decisions at issue and the effects that those decisions had on them, the
decisionmaking process itself -- which is the relevant issue in proving a pattern or practice of
discrimination -- was outside the scope of the women's agency or employment").

In Williams v. Pharmacia, Inc., the Seventh Circuit addressed a former female employee's
sex discrimination case, in which the district court found discrimination and awarded damages.  The
Seventh Circuit held that the district court erred in admitting evidence at trial relating to the
plaintiff's co-workers' experiences with the company.  See 137 F.3d at 951.  The evidence related
to a manager's pattern of discrimination:

Williams and her former supervisor, Mike Baker, testified that five other women
employed by Pharmacia had expressed dissatisfaction with the way that Pharmacia,
and in particular Paul Lopez, was treating them.  Lisa Bleisch told Williams that
Lopez refused to assign her a different supervisor after she complained that her
current supervisor was discriminating against her because of her sex.  In addition,
Baker testified that Bleisch told him that "Paul [Lopez]'s oppressive management
style was too much for her and she just couldn't take it and she was going to get out."
Sue Ponikar told Baker that she "just couldn't take reporting to Paul [Lopez]
anymore, it was just too oppressive and she had to get out."  Sue Marovic informed
Baker that she believed Lopez "was trying to run her off" by making "unreasonable
demands" on her.  Kathy Kahn told Baker that she suspected Lopez was "out to get
her" and that this was the reason why Baker, who was on the same level as Kahn in
the corporate structure, had been asked to supervise and evaluate her performance.
Finally, Pat Hanlon complained to Williams about the low ratings she received from
her supervisor and reported that, when she complained, the company's only response

_____

was to give her a new computer.  Williams also introduced into evidence Hanlon's resignation letter in which she complained about discrimination and harassment by her supervisor and criticized Paul Lopez for failing to take any action.  Williams introduced these out-of-court statements to demonstrate a pattern or practice of sex discrimination at the company.

137 F.3d at 950.  The district court rejected Pharmacia's hearsay and relevancy objections, concluding that the evidence was admissible as a party admission under Rule 801(d)(2)(D).  Pharmacia argued that an employee's statement regarding a particular action of the employer qualifies as a vicarious admission under rule 801 only if [t]he employee-declarant was involved in the decisionmaking process leading up to the employer's action.  Noting that "[t]he precise reach of Rule 801(d)(2)(D) is sometimes difficult to discern, as there has been considerable debate about the justification for classifying vicarious admissions as non-hearsay," 137 F.3d at 950 (citing 4 Weinstein's Evidence § 801(d)(2)(D)[01] at 801226 to 801-227 (Matthew Bender 1987); Freda F. Bein, Parties' Admissions, Agents' Admissions: Hearsay Wolves in Sheep's Clothing, 12 Hofstra L.Rev. 393, 427-45 (1984)), the Seventh Circuit asserted its reluctance "to follow Pharmacia's suggestion and read into the rule a generalized 'personal involvement' requirement, especially in light of the Advisory Committee's admonition that '[t]he freedom which admissions have enjoyed . . . from the restrictive influences of . . . the rule requiring firsthand knowledge . . . calls for generous treatment of this avenue to admissibility.'"  137 F.3d at 950 (citing Fed. R. Evid. 801(d) advisory committee's note (2)).  The Seventh Circuit concluded, however, that the evidence should have been excluded, because the statements "did not relate to matters within the scope of the declarants' agency or employment."  137 F.3d at 950.  The Seventh Circuit explained:

> Although the complaints voiced by the five women described their unhappiness with their jobs and with their supervisors, not everything that relates to one's job falls within the scope of one's agency or employment.  None of the women were agents of Pharmacia for the purpose of making managerial decisions affecting the terms and conditions of their own employment.  These decisions were made by their superiors at the company.  The evidence was introduced at trial to support the plaintiff's theory of a pattern and practice of discriminatory decisionmaking, but there is no evidence that any of the five women were privy to or participated in Pharmacia's decisions affecting them.  They were the subjects of those decisions; they did not make them.  Although the women knew the outcomes of the managerial decisions at issue and the effects that those decisions had on them, the decisionmaking process itself -- which is the relevant issue in proving a pattern or practice of discrimination -- was outside the scope of the women's agency or employment.

137 F.3d at 950-51.

Alvarado does not provide evidence, or even contentions, that would show that Brown's alleged statements were made within the scope of his employment.  The only information that Alvarado offers about Brown is that Brown "was a young airman at the time, two-striper.  He was

a mechanic," Alvarado Depo. at 48:8-9, and that Rariden's alleged "remarks were made at a party at Mr. Rariden's home and in the presence of an African American co-worker, Sargent Harris Brown, who the Plaintiff believes is still in the military and stationed at White Sands or NASA." Response at 11.  Alvarado has not met his burden of showing that the statements"concern[ed] a matter within the scope of [Brown's] agency or employment," Fed. R. Evid. 804(d)(2)(D), because he has not shown that Brown was "involved in the decisionmaking process affecting the employment action involved."  Jaramillo v. Colorado Judicial Dept., 427 F.3d at 1314 (quoting Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d at 762).  See Curtis v. Okla. City Public Schs. Bd. of Educ., 147 F.3d 1200, 1218 n.21 (10th Cir. 1998)("A review of the record indicates Plaintiff did not assert before the district court that the statement was admissible based on [rule 801(d)(2)(D)]. Furthermore, Plaintiff did not satisfy his burden, as proponent of the evidence, of demonstrating to the court that the statement satisfied the requirements of the rule."  (citing Boren v. Sable, 887 F.2d 1032, 1037-38 (10th Cir.1989))).

The Court may not consider inadmissible hearsay on a motion for summary judgment.  "[A] third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill."  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995)("Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment."); Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1121 (10th Cir. 2007)("[H]earsay testimony is inadmissible 'in support of, or opposition to, summary judgment.'" (quoting Starr v. Pearle Vision, Inc., 54 F.3d at 1555)); Young v. Dillon Cos., Inc., 468 F.3d 1243, 1252 (10th Cir. 2006)(holding that statements revealing "repugnant racial animus" were inadmissible because they were "allegedly made to other employees and . . . conveyed, second-hand, to" the plaintiff).  Alvarado's contention that Brown should be available and able to testify about the incidents at trial is unavailing.  Response at 11. The Tenth Circuit considered and rejected this argument in Johnson v. Weld County Colorado, 594 F.3d 1202 (10th Cir. 2010).  In that case, the appellant urged the Tenth Circuit to consider hearsay testimony, because the statements "could be replaced at trial by admissible evidence, namely . . . live testimony."  594 F.3d at 1209.  The Tenth Circuit rejected this argument, stating: "This we cannot do.  When a proper hearsay objection has been made and preserved, '[i]t is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment.'" 594 F.3d at 1209 (quoting Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998); Gross v. Burggraf Constr. Co., 53 F.3d at 1541).  See Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1176 (10th Cir. 2007)("Under our precedents, we are constrained to disregard such hearsay on summary judgment when, as here, there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule.").  The Court thus will not consider Alvarado's hearsay evidence when deciding this Motion for Summary judgment.

In contrast to Brown's alleged statements, the statements of Alvarado's former supervisors, Neddo and Hage, about Rariden pressuring them to give Alvarado a lower performance rating are statements from employees who had "actually been involved in the decision to [rate] the person bringing the discrimination charge.'"  Fester v. Farmer Bros. Co., 49 F. App'x. at 796 (10th Cir. 2002)(citation omitted).  These statements are therefore "concern[] a matter within the scope of the agency or employment."  Fed. R. Evid. 804(d)(2)(D).  Because the Defendant's other argument --

Alvarado was active in labor affairs and was a union steward for American Federation of Government Employees Local 2263 (the "Union").  <u>See</u> Response ¶ 10, at 5 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); Alvarado Depo. at 42:8-14, 45:20-46:13.  As part of Alvarado's union activity, he was involved in filing unfair labor complaints against the Mobile Repair Inspector in the Logistics Readiness Squadron (the "Flight").  <u>See</u> Response ¶ 11, at 5 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact).

### 2. <u>Alvarado's Employement at Kirkland Air Force Base.</u>

Between 1987 and October 2002, Alvarado was employed at Kirtland Air Force Base, Albuquerque, New Mexico, serving as a Mobile Repair Inspector in the Flight; Alvarado had approximately thirty years of government employment.  <u>See</u> Memorandum in Support of Motion for Summary Judgment (Doc. No. 44) ¶ 1, at 2, filed December 12, 2010 (Doc. 45)("Motion")(citing Complaint, ¶¶ 9-10, at 3-4)(setting forth this fact); Response ¶ 1, at 2 (setting forth this fact).  As an inspector, Alvarado was responsible for assuring that all vehicles the Flight maintained and serviced left the facility in a safe and serviceable condition pursuant to all pertinent technical orders and Air Force Instructions.  <u>See</u> Motion ¶ 2, at 1 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Declaration of Randy Rettinger ¶ 2, at 1 (executed November 24, 2010), filed December 6, 2010 (Doc. 45-1).

In 2002, Randy Rettinger, Vehicle Maintenance Superintendent, was Alvarado's immediate supervisor.  <u>See</u> Motion ¶ 3, at 2 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Declaration of Michael Rariden ¶ 1, at 1 (executed December 1, 2010), filed

---

that Alvarado's scores were not lowered -- goes to the import of the allegation, and not its admissibility, the Court admits Neddo's and Hage's statements.

December 6, 2010 (Doc. 45-3).  In 2002, Rariden was Alvarado's second level supervisor.  See

Motion ¶ 4, at 2 (setting forth this fact); Response at 3-11 (not specifically controverting this fact);

Rariden Decl. ¶ 1, at 1.  Rariden and Rettinger are "Caucasian."  Response ¶ 9, at 5 (setting forth

this fact); Reply at 2-7 (not specifically controverting this fact).

    Alvarado's union activity frustrated Rariden.  See Transcript of Hearing at 169:16-22,

Alvarado v. Air Force, MSPB DE-0572-03-0048-I-1 (May 12, 2003)(Hofman)("MSRB

Transcript").[3]  Rariden scrutinized Alvarado's job performance "a little more so than some of the

---

[3] The parties disputed retired Vehicle Maintenance Superintendent John Hofman III's testimony at the hearing before the MSPB.  Alvarado purports to glean Material Facts No. 12, 13, 17, and 18 from Hofman's testimony.  The Defendant replies that Alvarado mischaracterizes Hofman's testimony.  Hofman was a Vehicle Maintenance Superintendent at the Flight where Alvarado worked.  See MSRB Transcript at 162:17-18 (Hofman).  He shared an office with Rariden for more than a year before retiring in February 2001.  See MSRB Transcript at 164:23-165:8, 166:3-19 (Montoya, Hofman).  Alvarado contends that Hofman testified that "Rariden became very frustrated because of the Plaintiff's Equal Employment Opportunity ("EEO") Complaints and union activities because of the time it took to respond to Union complaints against the unit," and that, after retiring, Hofman "periodically returned" to the Flight and "it became obvious to him that Mr. Rariden was still frustrated with dealing with the Plaintiff's complaints."  Response ¶ 12, at 5 (citing MSRB Transcript at 164-166, 168-170).

    The Defendant replies that the cited testimony relates only to Alvarado's EEO Complaint from 1997 or 1998, and that Hofman testified that the EEO complaint was not the source of Rariden's frustration, "because he really didn't have anything to do with it, other than it was happening as he was taking over.  But he wasn't involved in it in anyway."  Reply at 2-3 (quoting MSRB Transcript at 169 (Hofman)).  Rather, the Defendant contends, Hofman testified that Alvarado's union activities caused Rariden frustration because "[t]hose were all things that generated paperwork from Mr. Rariden, either approving or disapproving or, you know, setting up a time."  Reply at 4 (quoting MSRB Transcript at 169 (Hofman)).  The Defendant asserts that "[a]t no time did Mr. Hofman testify that Plaintiff's EEO complaints were the cause of the frustration."  Reply at 3.

    After carefully reviewing Hofman's testimony in the MSRB Transcript, the Court concludes that the record does not support Alvarado's statement that Hofman testified "Rariden became very frustrated because of the Plaintiff's EEO complaints."  Hofman stated that Rariden's frustration was not about Alvarado's EEO Complaint, "because he really didn't have anything to do with it, other than it was happening as he was taking over.  But he wasn't involved in it in any way."  MSRB Transcript 169:10-14 (Hofman).  Rather, Hofman testified that Rariden was frustrated about

other employees," and, during annual reviews, Rariden "would look pretty hard at" Alvarado's

ratings, and Rariden would speak to Alvarado's "supervisors if he felt that the ratings were too

high." MSRB Transcript at 167:11-22 (Hofman).[4]  In one incident, Alvarado's supervisor, Hage,

had "spoken highly of Mr. Alvarado's performance" and given "Alvarado a 'high rating.'" MSRB

Transcript at 168:7-10 (Hofman).  Rariden had "long conversations" with Hage, trying to convince

him that Alvarado' rating "should have been lower."  MSRB Transcript at 168:11-16 (Hofman).

Hage told Alvarado that "Rariden had told [Hage that] he needed to give Alvarado lower rating,

because I had just gotten straight nines."  Alvarado Depo. at 152:5-11.  Hage ultimately gave

Alvarado a rating of "Superior," the highest available rating.  Alvarado Depo. at 187:21-23.  Another

---

when Mr. Alvarado got involved in with the union and became a union steward,
things like that, where he would request time to of meet with someone else to deal
with a union issue.  Those were the things that generated paperwork from Mr.
Rariden, either approving or disapproving or . . . setting up time.

MSRB Transcript 169:16-22 (Hofman).

[4] In Material Facts Nos. 17 and 18, Alvarado contends that Hofman testified that "Rariden
scrutinized the Plaintiff's job performance more than the work of other employees, and during the
annual job appraisals, he would ask his supervisors if their evaluations of the Plaintiff were not too
high," and that "in one such occasion, a supervisor, Sargent Hage, praised the Plaintiff's high
performance and had given him a high performance rating, and Mr. Rariden disagreed, and after a
long conversation persuaded Sargent Hage to reduce the Plaintiff's performance rating."  Response
¶¶ 17-18, at 6-7 (citing MSRB Transcript at 167-68).  The Defendant contends that Alvarado again
mischaracterizes Hofman's testimony and that Hofman did not testify that Rariden persuaded Hage
to reduce Alvarado's performance rating.  The Defendant contends that, although Hofman stated that
he "believe[d] in the end a couple of marks may have dropped a little bit before the final appraisal
went forward," Hofman clarified his testimony on cross-examination after being shown a copy of
Hage's appraisal, stating that he signed the appraisal as the reviewer and that the rating was
"Superior," the highest rating available.  Reply at 3 (quoting MSRB Transcript at 168, 187-189
(Hofman)).  The Defendant contends that Hofman testified that it was a "very good performance
appraisal" and that he would not have signed the appraisal if it had not accurately reflected
Alvarado's performance for the year in question.  Reply at 3 (quoting MSRB Transcript at 188
(Hofman)).  After reviewing Hofman's testimony, the Court concludes that Hofman testified that
Rariden pressured Hage to lower Alvarado's rating, but that Hage gave the highest rating.

supervisor, Neddo, also told Alvarado that Rariden pressured him to lower Alvarado's performance rating.  See Alvarado Depo. at 152:15-23.  Neddo also told Alvarado:"If you do anything, I know he doesn't like you, so he's going to do something to you."  Alvarado Depo. at 152:23-153:1.  Before 1998, when Rariden was promoted, Alvarado's previous supervisors gave Alvarado performance evaluation rating of good to excellent.  See Response ¶ 33, at 10 (setting forth this fact); Reply at 6 (admitting this fact).  From 1998 to 2002, Alvarado was rated excellent and superior.  See Motion ¶ 9, at 3 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Reply (setting forth this fact); Rettinger Decl. ¶ 3, at 1; Alvarado Depo. at 74:16-21, 152:1-156:3.  Rariden also appeared to look at Johnny Rael's, Domingo Luero's, and Heavy Mobile Equipment Mechanic Supervisor Michael Jiron's, performance ratings "pretty closely, and if [Rariden] felt they were rated too highly . . . he would have the supervisors in for a discussion."  Alvarado Depo. at 180:104.[5]

Shortly after Rettinger joined the Flight as Alvarado's supervisor in August of 2001,

---

[5] In Material Fact 31, Alvarado contends that Hofman testified that Rariden "appeared to scrutinize the performance ratings of employees with Hispanic surnames more closely than other employees, and would bring the supervisors in to discuss the matter if he felt that they were giving the Hispanics employees ratings that he thought were too high."  Response ¶ 31, at 9-10 (citing MSRB Transcript 178-181).  The Defendant replies that Alvarado again mischaracterizes Hofman's testimony.  The Defendant contends that Hofman testified that Rariden scrutinized Alvarado's performance rating and the ratings of Rael, Luero, and Jiron -- who is Native America -- but Hofman did not state that Rariden monitored their ratings more closely because of their Hispanic surnames or because they were Hispanic; rather, Hofman offered no explanation as to why their ratings were allegedly scrutinized.  See Reply at 5 (citing MSRB Transcript at 178-179).  After carefully reviewing Hofman's testimony, the Court agrees that Hofman did not state that Rariden scrutinized Rael, Jiron, and Luero's ratings more closely because of their Hispanic surnames.  On the contrary, Hofman testified that he did not "feel that [Rariden] treated people differently based on skin color."  MSRB Transcript at 181:6-7 (Hofman).  Hofman further testified that Rariden's scrutiny of Alvarado's rating was based on"Rariden's perception of the quality of [Alvarado's] work, or timeliness," and because Hage was only Alvarado's supervisor for part of the year, and Alvarado had performed differently for the previous supervisor.  MSRB Transcript at 196:6-14 (Hofman).

Alvarado complained to Rettinger about Rariden's alleged remarks about "Mexicans"; thereafter, Alvarado's supervisors began to scrutinize his work, leading Alvarado to believe Rettinger told Rariden about Alvarado's complaint.  See Response ¶ 30, at 9 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); Alvarado Depo. at 28:2-29:7.  At a time before Alvarado was removed, he heard Rariden make a joke using the term "Mexican" at the the NCO Club on Kirtland Airforce Base.  Alvarado Depo. at 47:25-53:3.[6]

As inspectors retired and left the Flight, they were not replaced, and eventually Alvarado alone performed the duties that previously three inspectors preformed.  See Alvarado Depo. at 30:2-6.  Alvarado does not know who decided not to replace the departed inspectors, or the basis of the decision; the increased workload made it more difficult for Alvarado to avoid rejects[7] under Rariden's scrutiny.  See Alvarado Depo. at 30:7-33:4, 33:14-34:10.[8]

---

[6] The Defendant specifically controverts Alvarado's Material Fact No. 29.  Alvarado contends that, "[a]t one time prior to and near the removal of the Plaintiff, Mr. Rariden made racial jokes about 'Mexicans' during a social event where the Plaintiff was present."  Response ¶ 29, at 9 (citing Alvarado Depo. 47, 48, 50-52).  The Defendant replies that Alvarado mischaracterizes Alvarado's testimony.  After reviewing Alvarado's Deposition testimony on which Alvarado bases Material Fact 29, the Court agrees that the record does not support Material Fact 29.  Alvarado testified that he could not recall Rariden's joke.  See Alvarado Depo. at 51:23-25.  The incident occurred at the NCO Club on Kirtland Airforce Base, and Alvarado was at the Club for less than fifteen minutes.  See Alvarado Depo. at 47:25-48:5, 50:11-12.  Rariden started to tell a joke, and "once [Alvarado] heard the word 'Mexican,' [he] just left."  Id. at 51:24-25.  He did not hear the punchline, id. at 52:1-2, or know if a nationality was the recipient of the punch line, id. at 53:1-3; Alvarado "walked out and left as soon as [Rariden] started," id. at 52:10-11.

[7] While neither party expressly defines "rejects," the term appears to generally refer to discrepancies on an employee's work order, such as an entry falsely indicating that a task has been performed, or that an item has passed inspection when it should have failed.

[8] The Defendant specifically controverts Alvarado's Material Fact No. 32.  Alvarado contends that "Mr. Rariden and Mr. Rettinger devised ways to overwork the Plaintiff and to make it appear that the Plaintiff's work was substandard when in fact it met specifications."  Response ¶ 32, at 9 (citing Alvarado Depo. at 30-34).  The Defendant replies that the cited testimony does not support the allegation.  The Defendant contends that, in his deposition, Alvarado explained that he

3.      **The Events Leading to Alvarado's Removal.**

At all times material, the Air Force used a quality-control system to ensure that employees were performing their work satisfactorily.  See Motion ¶ 5, at 2 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 3, at 1; Rettinger Decl. ¶ 3, at 1. In April 2000, Rariden modified the Civilian Performance Plans -- AF Form 860 -- for all Wage Grade ("WG") and Wage Leaders ("WL") vehicle maintenance workers in the Flight, increasing the number of allowable work order rejects from six to twelve per year.  See Motion ¶ 6, at 2 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rariden Decl. ¶ 3, at 1.  Rariden modified the Plans in response to ever-changing vehicle design and vehicle complexity, to allow for greater flexibility for evaluating employees, and to improve employee performance and their ability to meet or exceed applicable critical performance elements.  See Motion ¶ 7, at 2 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rariden Decl. ¶ 3, at 1.

Alvarado participated in the Union's challenge to the new standards as violating the Union-Management collective bargaining agreement ("CBA").  Response ¶ 16, at 6 (setting forth this fact).  See Reply at 2-7 (not specifically controverting this fact); Alvarado Depo. at 45:20-46:10, 66:17-23; Letter from Michelle Sandoval to John Houha (dated July 17, 2002), filed December 22,

---

was overworked because the Flight did not inspectors who had retired, and Alvarado did not know why replacements were not hired; and Alvarado "admitted that Mr. Rariden was not responsible for hiring replacements."  Reply at 5-6 (citing Alvarado Depo. at 30-31.  The Defendant further contends that "[t]here is no testimony indicating that Plaintiff was overworked by design or scheme."  Reply at 6.

The Court agrees that the cited testimony does not support Material Fact No. 32.  Alvarado testified that he does not know who decided not to replace the inspectors, and he conceded that it was "most likely not Rariden."  Alvarado Depo. at 30:7-13.  He also testified that he did not know the basis of the decision.  See id. at 31:4-6.  Alvarado further testified, however, that the increased workload had the "roundabout" effect of making it difficult for Alvarado to satisfy Rariden's demands.  See id. at 33:14-35:6.

2010 (Doc. 28-5)("Demand to Bargain").

The modification was effective for the 2000-2001 appraisal period.  See Motion ¶ 8, at 3 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rariden Decl. ¶ 3, at 1.  During the 2001-2002 appraisal performance rating period ending March 31, 2002, Alvarado received fourteen rejects.  See Motion ¶ 9, at 3 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rettinger Decl. ¶ 3, at 1.  Although Alvarado exceeded the number of allowable rejects, Rettinger gave Alvarado a rating of "Excellent," the second highest rating obtainable.  See Motion ¶ 10, at 3 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 3, at 1.  During 2001 and 2002, at least one other non-Hispanic employee had similar amounts of rejects as Alvarado, and was not placed on an opportunity period -- a period during which an employee is allowed to demonstrate that he or she could acceptably perform.  See Motion ¶ 13, at 3 (setting forth this fact); Response ¶¶ 15, 35, at 6, 10-11 (admitting this fact), but was immediately reprimanded.  Response ¶ 36, at 11 (setting forth this fact); Reply at 6-7 (setting forth this fact); Rariden Decl. ¶¶ 15, 16, at 4.[9]

During the first two-and-one-half months of the 2002 to 2003 appraisal period, Alvarado incurred twelve rejects.  See Motion ¶ 11, at 3 (setting forth this fact); Response at ¶ 19, at 7 (setting

_____

[9] The Defendant specifically controverts Alvarado's Material Fact No. 36, which states: "During 2001 and 2002, other, non-Hispanic employees had similar amounts of rejects but were not placed on an opportunity period."  Response ¶ 36, at 11 (citing Alvarado Depo. at 37, 38, 55, 56, 58-60, 118-120).  In the cited testimony, Alvarado refers to Jiron and Larry Whitlock.  The Defendant contends that Whitlock did not exceed the number of allowable rejects and that Jiron was immediately punished without the benefit of an opportunity period, because he was not a bargaining unit employee.  See Reply at 6-7 (citing Rariden Decl. ¶¶ 15, 16, at 4).  While the Defendant's contentions support a legal argument that Alvarado has not shown other similarly situated employees were treated differently, they do not controvert that Jiron had similar amounts of rejects but was not placed on an opportunity period.

forth this fact); Rettinger Decl. ¶ 3, at 1; Notice of Opportunity Period at 1 (dated June 19, 2002),

filed December 6, 2010 (Doc. 45-1, Ex. 2, at 5).  On June 20, 2002, Alvarado was placed on a

thirty-day opportunity period.  See Motion ¶ 12, at 3 (setting forth this fact); Response ¶¶ 15, 35,

at 6, 10-11 (admitting this fact); id. ¶ 19, at 7 (setting forth this fact); Rettinger Decl. ¶ 4, at 1;

Notice of Opportunity Period at 1.  The purpose of the opportunity period was to allow Alvarado

to demonstrate that he could perform acceptably.  See Motion ¶ 13, at 3 (setting forth this fact);

Response ¶¶ 15, 35, at 6, 10-11 (admitting this fact);[10] Rettinger Decl. ¶ 4, at 2; Notice of

Opportunity Period at 1.  During the opportunity period, Alvarado was afforded four additional

rejects.  See Motion ¶ 14, at 3 (setting forth this fact); Rettinger Decl. ¶ 4, at 2; Notice of

Opportunity Period at 1.  During the first three weeks of the opportunity period, Rettinger and

Rariden accompanied Alvarado on a number of inspections.  See Motion ¶ 15, at 3 (setting forth this

fact); Rettinger Decl. ¶ 5, at 2.  During these first three weeks, Alvarado performed superbly,

incurring no rejects.  See Motion ¶ 16, at 3 (setting forth this fact); Response ¶ 20, at 7 (setting forth

this fact); Rettinger Decl. ¶ 5, at 2.

---

[10] Alvarado acknowledges that "[i]f an employee had over 12 rejects his or her performance
was considered unacceptable and the employee could be required to undergo an 'opportunity
period,'" Response ¶ 15, at 6, and that "supervisors claimed that the Plaintiff had over 12 rejects and
was placed on a thirty (30) day opportunity period," Response ¶ 35, at 10-11.  Alvarado contends,
however, that "[t]he placement of the Plaintiff on the opportunity period was a sham and a pretext
to discipline him for his union activities and because of his race."  Response ¶ 37, at 11.  The
Defendant specifically controverts Alvarado's Material Fact No. 37, asserting that it is a "conclusory
allegation based on Plaintiff's subjective belief."  Reply at 7.
        Alvarado's assertion that the decision was pretext is a legal conclusion, not a material fact,
and is misplaced in Alvarado's list of Material Facts.  See Ruiz v. City of Brush, 2006 WL 1816454,
at *4 (D. Colo. 2006)("[T]he 'sole purpose' of the required statements of and responses to
undisputed material facts is 'to establish facts and determine which of them are in dispute[;] [l]egal
argument should be reserved for separate portions of the brief.")(citation omitted).  Consequently,
the Court will address the assertion in its legal analysis.

On July 18, 2002 -- during the opportunity period -- Alvarado inspected and passed an aircraft refueling truck in the shop for scheduled maintenance and annual inspection.  See Motion ¶ 17, at 3 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 7, at 2.  That same day, Rariden inspected the aircraft refueling truck and identified the following rejects:

 a. Annual opacity test was not circled on Annual Inspection Checklist;

 b. Paint battery box not initialed on the R-11 Preventive Maintenance Checklist;

 c. Battery terminals were corroded, Sch Maint.  Checklist Item # 9;

 d. Battery box/compartment not painted, Sch Maint.  Checklist Item # 9;

 e. Windshield washer inoperative, Sch Maint.  Checklist Item # 4; and,

 f. Ether bottle empty (previously discussed ether bottle replacement with Alvarado).

Motion ¶ 18, at 3-4.  See Response ¶ 22, at 7 (setting forth this fact); Rariden Decl. ¶ 7, at 2.  As a consequence, Alvarado incurred 6 rejects during the opportunity period -- two more than he was permitted.  See Motion ¶ 19, at 4 (setting forth this fact); Response ¶ 23, at 8 (setting forth this fact); Rettinger Decl. ¶ 5, at 2.  Alvarado contends that rejects were "minor or were not discrepancies at all."  Response ¶ 23, at 8.[11]  Rariden's July 18, 2002 inspection of the aircraft refueling truck

---

[11] Alvarado contends that "[t]he alleged discrepancies found by Mr. Rariden were minor, or they were not discrepancies at all, and included such things as an unpainted battery box, not initialing or circling two (2) items in a form and other such matters."  Response ¶ 23, at 8 (citing Rariden Decl. ¶ 7, at 2).  The Defendant contends that Alvarado's description of the rejects as "minor or were not discrepancies at all" is Alvarado's characterization, and Rariden considered the rejects significant because they suggested that Alvarado passed the vehicle without inspecting it and Rariden had repeatedly directed Alvarado to replace ether bottles.  Reply at 2, 11 (citing Rariden Decl. ¶¶ 7-8, at 2-3).  The fact, therefore, is in dispute.  Alvarado does not, as discussed in the Court's legal analysis, contend that Rariden did not believe in good faith that the rejects were significant.  See Alvarado Depo. at 114:15-22 (stating Alvarado knows of no facts showing Rariden did not act in  good faith).

occurred one day after the Union sent a letter demanding to bargain on the reject system, <u>see</u> Demand to Bargain at 1, and three days before the end of Alvarado's opportunity period, <u>see</u> Response ¶ 24, at 8 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); Notice of Opportunity Period at 1.

Because of the rejects on the aircraft refueling truck, Alvarado failed the opportunity period. <u>See</u> Motion ¶ 21, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 6, at 2; Notice of Failure at 1 (dated August 2, 2002), filed December 6, 2010 (Doc. 45-2, Ex. 3, at 1).  After the conclusion of the opportunity period, Alvarado incurred eighteen additional rejects, producing twenty-four rejects in all.  <u>See</u> Motion ¶ 20, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 6, at 2.

On August 2, 2002, Rettinger prepared a Notice of Failure, which detailed the reasons Alvarado failed the opportunity period.  <u>See</u> Response ¶ 26, at 8 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); Rettinger Decl. ¶ 6, at 2; Notice of Failure at 1.  On or about August 6, 2002, Rettinger arrived at the Customer Care Center where Alvarado was working to deliver a copy of the Notice of Failure to Alvarado, and Rettinger noticed that a video of Alvarado's band was playing on the video cassette recorder and television.  <u>See</u> Response ¶ 26, at 8 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); Revelant Factors in Selecting a Penalty for Misconduct at 2, filed December 6, 2010 (Doc. 45-3, Ex. 3, at 7); MSRB Transcript at 44:2-48:16 (Rettinger).

On September 6, 2002, Rettinger issued a Notice of Proposed Removal to Alvarado.  <u>See</u> Motion ¶ 22, at 4 (setting forth this fact); Response ¶ 27, at 8-9 (setting forth this fact); Rettinger Decl. ¶ 8, at 2; Notice of Proposed Removal (dated September 6, 2002), filed December 6, 2010

(Doc. 45-2, Ex. 4 at 2).  Rettinger delivered the Notice of Removal to Alvarado during a scheduled meeting with Alvarado and Union representatives in regard to the Union's protest of the reject system.  See Response ¶ 27, at 8-9 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); MSRB Transcript at 86:8-12 (Oliva, Rariden).

Rettinger "decided to propose removal [of Alvarado] from the Agency because of alleged discrepancies before and during the opportunity period, and also, for another incident where a television was on in the workplace at the Customer Care Center during a time the Plaintiff was on duty."  Response ¶ 25, at 8.  See Motion ¶ 23, at 4 ("Rettinger proposed Plaintiff's removal based solely on the reasons articulated in the [Notice of Proposed Removal]."); Rettinger Decl. ¶ 8, at 2; Notice of Proposed Removal.  Alvarado's race, national origin, or prior EEO activity did not motivate Rettinger's decision to propose Alvarado's removal.  See Motion ¶ 24, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 10, at 3; Notice of Proposed Removal at 1-2.

Rariden was the deciding official for the proposed action.  See Motion ¶ 25, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 1, at 1. On or about October 4, 2002, in response to the Notice of Proposed Removal, Rariden received a letter from Scott Blanch, an AFGE Local 2263 representative, and a response from Alvarado.  See Motion ¶ 26, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 11, at 3.  On October 8, 2002, Alvarado's attorney, Dennis Montoya, responded orally to the Notice of Proposed Removal.  See Motion ¶ 26, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 11, at 3.  On October 21, 2002, Rariden issued a Notice of Decision to Remove, filed December 6, 2010 (Doc. 45-4, Ex. 4, at 2),

removing Alvarado from federal service for: (i) insubordinate defiance of authority and failure to comply with minimum standards of conduct, which Alvarado's careless workmanship, certification of inaccurate information on inspection checklists and misuse of government equipment demonstrated; (ii) twenty-four rejects between April and September of 2002, including "obvious defects" that indicated Alvarado may not have even looked at the vehicle when he certified that it passed inspection and may have resulted in "serious safety problems" had the vehicle been released; (iii) many of the rejects occurred after Alvarado was counseled on his "careless workmanship and given opportunity to improve"; and (iv) Alvarado's previous disciplinary record, which included a fourteen day suspension for making personal long distance telephone calls on a government phone. See Motion ¶ 27, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 13, at 3.  Alvarado's race, national origin, or prior EEO activity did not motivate Rariden's decision to remove Alvarado from federal service.  See Motion ¶ 28, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 14, at 3.

      **4.**    **<u>Alvarado's EEO Activity.</u>**

Alvarado alleges that he was forced to file multiple EEO complaints against the Department of the Air Force.  See Motion ¶ 29, at 5 (citing Complaint ¶ 13, at 4-5); Reply at 2-7 (not specifically controverting this fact).  At some time in the 1990s, Alvarado and Rariden both sought a Vehicle Maintenance Officer position, and Rariden was selected over Alvarado.  See Response ¶ 4, at 4 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact).  In 1997 or 1998, Alvarado filed an EEO Complaint alleging discrimination because he had been unfairly denied the promotion to Vehicle Maintenance Officer, and the matter was eventually settled after Alvarado filed a New Mexico federal district court action, <u>Alvarado v. Widnall</u>, No. CIV 99-0772-MV-DJS,

in 1999.  <u>See</u> Response ¶ 3, at 3-4 (setting forth this fact); Reply 2-7 (not specifically controverting

this fact).  As a part of the settlement of the EEO claim, Alvarado was given priority consideration

for the next promotion available in the unit.  <u>See</u> Response ¶ 5, at 5 (setting forth this fact); Reply

at 2-7 (not specifically controverting this fact); Alvarado Depo. at 149:7-151:19.

On July 8, 1999, Alvarado filed a second EEO Complaint against supervisor Joseph Long,

for disciplinary actions he alleged were in reprisal for the previous EEO Complaint.  <u>See</u> Response

¶ 6, at 4 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); EEO

Complaint at 1 (dated July 8, 1999), filed December 12, 2010 (Doc. 48-2, Ex. 2, at 1)("July 8, 1999

EEO Complaint").  On October 1, 1999, Alvarado filed another EEO Complaint against Rariden and

Hofman, alleging race, color, and national origin discrimination, and "reprisal."  Response ¶ 7, at

4 (setting forth this fact); EEO Complaint at 1 (dated October 1, 1999), filed December 12, 2010

(Doc. 48-3, Ex. 3, at 1)("October 1, 1999 EEO Complaint").  <u>See</u> Motion ¶ 30, at 5 (setting forth this

fact); Alvarado Depo. at 17:5-23.  The events of which Alvarado complained in the EEO Complaints

occurred during EEOC and district court proceedings regarding Alvarado's claim that he was

unfairly denied the promotion.  <u>See</u> Response ¶ 8, at 5 (setting forth this fact); Reply at 2-7 (not

specifically controverting this fact); July 8, 1999 EEO Complaint at 1; October 1, 1999 EEO

Complaint at 1.  Between October 1, 1999, and Alvarado's removal on October 21, 2002, Alvarado

did not file any complaints of discrimination against the Department of the Air Force.  <u>See</u> Motion

¶ 31, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact);

Alvarado Depo. at 18-19.

**<u>PROCEDURAL BACKGROUND</u>**

Alvarado was terminated on October 21, 2002.  <u>See</u> <u>Alvarado Jr., Angel v. Department of</u>

the Air Force, MSPB Record at 1846 ("MSPB Record").  He appealed his removal, alleging that the termination constituted retaliation for protected union and equal employment-opportunity activity and discrimination based on his national origin.  See MSPB Record at 1568.  As both Administrative Judge Jack E. Salyer and the MSPB subsequently found, the charge against Alvarado was best characterized as "insubordinate defiance of authority."  MSPB Record at 1851, 1943.  Alvarado's first hearing was before Administrative Judge Patricia M. Miller on May 12, 2003.  See MSPB Record at 1086.  On August 22, 2003, Administrative Judge Miller issued an Initial Decision in favor of Alvarado.  See MSPB Record at 778.  She concluded that the charges were not sufficiently detailed to allow Alvarado to make an informed reply and reversed the action because of  harmful procedural error.  See MSPB Record at 781.  The Defendant submitted a petition for review, which the MSPB granted.  See MSPB Record at 944.  The MSPB issued a decision on September 28, 2004, vacating the Initial Decision because the record did not support Administrative Judge Miller's findings, and remanding the appeal for further adjudication.  See MSPB Record at 1567, 1571, 1573.

The case was remanded to Administrative Judge Salyer, and a second evidentiary hearing was held on January 31, 2005.  See MSPB Record at 1576.  On August 22, 2005, Administrative Judge  Salyer issued an Initial Decision overturning the Defendant's termination of Alvarado, because the Defendant failed to prove the charge of insubordinate defiance of authority by a preponderance of the evidence.  See MSPB Record at 1846, 1851.  The Defendant submitted another petition for review to the MSPB, and Alvarado filed a cross-petition for review.  See MSPB Record at 1936.  The MSPB granted the Defendant's petition for review on August 1, 2006, reversing -- for the second time -- a MSPB Administrative Judge.  See MSPB Record at 1939.   The MSPB found that Administrative Judge Salyer did not properly consider all the evidence and that he erred by not

sustaining the charge of insubordinate defiance of authority.  See MSPB Record at 1950-51.  Upon

a review of the record, the MSPB sustained the charge of insubordinate defiance of authority.  See

MSPB Record at 1959.  The Defendant acknowledged that the misuse-of-government equipment-

charge was relatively unimportant, and that it would have removed Alvarado solely on the

insubordinate defiance of authority charge.  See MSPB Record at 1959.  Thus, the MSPB found that

the misuse-of-government-property charge did not have an impact on the outcome of the case and

did not further consider the charge.  See MSPB Record at 1959.

Alvarado appealed the MSPB's decision in favor of the Defendant to this Court.  See

Complaint for Wrongful Discharge, Race and National Origin Discrimination, Reprisal and

Retaliation, and Petition for Judicial Review of Merit Systems Protection Board Opinion and Order,

filed August 30, 2006 (Doc. 1)("Complaint").  This proceeding is a "mixed-case" appeal from the

MSPB's opinion, involving both the appeal from the MSPB and a claim for discrimination.

Williams v. Rice, 983 F.2d 177, 179-80 (10th Cir. 1993)("Where a petition for review of a MSPB

decision involves both discrimination and other claims it is considered a 'mixed case.'  On the

discrimination claim, the petitioner 'shall have the right to trial de novo by the reviewing court.'

The other, non-discrimination claims, however, are reviewed on the administrative

record.")(citations omitted).  The Court previously resolved Alvarado's non-discrimination claims,

affirming the MSPB's decision.  See Alvarado v. Wynne, 626 F. Supp. 2d 1140 (D.N.M.

2009)(Browning, J.).  This opinion considers Alvarado's discrimination claims, which the Court

reviews de novo.  See Williams v. Rice, 983 F.2d at 179-80.

Count I of Alvarado's Complaint alleges that the Defendant discriminated against Alvarado

because of his race and national origin, and Count II alleges retaliation in violation of Title VII.  On

December 6, 2001, the Defendant filed his Motion for Summary Judgment.  See Doc. 44.  The Defendant moves the Court for summary judgment on all counts in Alvarado's Complaint.  As grounds for this motion, the Defendant states that there are no genuine issues of material fact and that he is entitled to summary judgment as a matter of law.  The Defendant sets forth the facts about which he contends no genuine issue exists in his Memorandum in Support of Motion for Summary Judgment, which the Defendant filed concurrently with his motion.  "For the purposes of this motion only, Defendant concedes that Plaintiff can establish prima facie claims of race and national origin discrimination."  Motion at 8 n.1.  The Defendant contends that the EEO Complaints on which Alvarado bases his retaliation claim were too far removed in time to establish a prima-facie case of retaliation.  The Defendant further contends that all of Alvarado's discrimination claims fail because the Defendant offers a legitimate, non-discriminatory justification for terminating Alvarado -- namely, Alvarado's excessive rejects.

Alvarado opposes the Defendant's Motion for Summary Judgment.  On December 21, 2010, Alvarado filed his Response.  See Doc. 47.  Alvarado contends that he has put forward credible evidence establishing a genuine question of material fact whether he was removed from his position because of race and national origin discrimination, and in retaliation for his EEO Complaints.  He asserts that he has produced evidence of Rariden's discriminatory remarks and actions toward Alvarado and other Hispanics under his supervision.  Alvarado further contends that he has put into dispute whether Rariden retaliated against Alvarado for his EEO Complaint and union activity.  Alvarado also contends that he has shown the Defendant's justification is pretextual, because Rariden subjected Alvarado to close and unreasonable scrutiny.

On January 7, 2011, the Defendant filed his Reply.  See Doc. 49.  The Defendant asserted

that, because Alvarado failed to specifically controvert any of the Defendant's undisputed facts, Alvarado had admitted all of them. The Defendant further asserted that Alvarado failed to establish a genuine question of material fact whether his justification for removing Alvarado was pretext.

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotes omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec, Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set

out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539.  Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . .
or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty
Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where a rational trier of fact, considering
the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.
See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three
principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue
whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby,
Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor
of the non-moving party, and construe all evidence in the light most favorable to the non-moving
party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477
U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to
be drawn in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v.
Liberty Lobby, Inc., 477 U.S. at 255.

### LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race,
color, religion, sex, or national origin."  Brown v. Gen. Servs. Admin., 425 U.S. 820, 825
(1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3).

> Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or
> refusing to hire or discharging any individual, or otherwise discriminating against
> any individual with respect to his compensation, terms, conditions, or privileges of
> employment, because of such individual's race, color, religion, sex, or national
> origin.

Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *6 (D.N.M. Dec. 31,

2007)(Browning, J.)(quoting 42 U.S.C. § 2000e-2(a)(1))(internal quotes and alterations omitted). With the 1972 amendments to the statute, Title VII's protections apply to federal employees as well as to employees of private concerns.  See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)).

At the summary-judgment stage, the nonmoving party must come forth with some proof of discrimination, either demonstrating the employer's discriminatory intent through direct evidence or, "[u]nder McDonnell Douglas[Corp. v. Green, 411 U.S. 792, 802 (1973),] a plaintiff may survive summary judgment by providing circumstantial rather than direct evidence of discrimination." Hall v. Interstate Brands Corp., No. 09-3229, 2010 WL 3565741, at *4 (10th Cir. Aug. 24, 2010).  If the plaintiff relies on indirect evidence to survive summary judgment, he or she must show a material factual dispute exists under the burden shifting framework of McDonnell Douglas Corp. v. Green. See 411 U.S. at 802.

### 1.    Direct Evidence.

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007). Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." Danville v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002). "When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination, [the Tenth Circuit] has held that the plaintiff must demonstrate a nexus exists between the alleged discriminatory statements and the . . . decision to terminate [the employee]." Negrete v. Maloof Distrib. L.L.C., No. CIV 06-0338 JB/LFG, Memorandum Opinion and Order at 39, filed November 28, 2007 (D.N.M.)(Browning, J.)(internal quotations omitted).  "Direct evidence is that which

demonstrates a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision to take the adverse employment action." Deneen v. Nw. Airlines, 132 F.3d 431, 436 (8th Cir. 1998).

### 2.      **Indirect Evidence in the McDonnell Douglas Framework.**

A plaintiff may use indirect evidence to establish a case under Title VII.  See McDonnell Douglas Corp. v. Green, 411 U.S. at 802-803.  "[C]laims of age, race, national origin, gender discrimination, and retaliation are all subject to the burden shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green."  Gamez v. Country Cottage Care and Rehab., 377 F. Supp. 2d 1103, 1119 (D.N.M. 2005)(Browning, J.)(citing McDonnell Douglas Corp. v. Green, 411 U.S. at 802-804).  Under the McDonnell Douglas framework, a plaintiff must set forth a prima-facie case of discrimination.  See Kelly v. City of Albuquerque, 375 F. Supp. 2d 1183, 1210 (D.N.M. 2004), aff'd by 542 F.3d 802(10th Cir. 2008).  If the plaintiff establishes a prima-facie case for any of his discrimination claims, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision."  Mitchell v. City of Wichita, Kan., 140 F. App'x 767, 777 (10th Cir. 2005).  "Upon the employer's articulation of a legitimate, nondiscriminatory reason . . . the presumption of discrimination established by the prima facie case simply drops out of the picture."  Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted).  The plaintiff then must present evidence that the defendant's proffered reason for the employment decision was pretextual.  See Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)).

a.     **Prima-Facie Case of Retaliation.**

In the absence of direct evidence, courts apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green.  To establish a prima-facie case of retaliation, a plaintiff must show: "(1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 (10th Cir. 2007)(quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202).

i.     **Protected Activity.**

A plaintiff must show that he or she engaged in a statutorily protected activity.  See Proctor v. United Parcel Serv., 502 F.3d at 1208.  Filing an EEOC complaint is protected activity.  See Anderson v. Coors Brewing Co., 181 F.3d at 1178 ("By filing an EEOC claim, Plaintiff engaged in protected activity.").   "There is no dispute that [the plaintiff's] EEO complaints are protected activity." Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).  For union activity to be protected under Title VII, it must be in opposition to discrimination.  See Malaney v. Elal Israel Airlines, 331 F. App'x 772, 775 (2d Cir. 2009)("Malaney's complaints to her supervisor and union did not include allegations of discrimination or other unlawful employment practices sufficient to demonstrate participation in a protected activity."  (citing Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999))); Stucky v. Dep't of Educ., 283 F. App'x 503, 505 (9th Cir. 2008)("The union grievances Stucky filed after 2000 do not qualify as protected activities because the record does not establish that they were lodged in opposition to Title VII violations."); Smith v. Potter, 252 F. App'x 224, 228 (10th Cir. 2007)("The union-grievance hearing was not protected

-30-

opposition to discrimination and therefore not protected by Title VII."); Tiedeman v. Neb. Dep't of

Corrs., 144 F. App'x 565, 566 (8th Cir. 2005)("Thus neither complaint [to a union or a supervisor]

is protected because it does not involve a practice 'made an unlawful employment practice' under

Title VII . . . ."   (citations omitted)); Trujillo v. Burlington N. Santa Fe R.R., No.

09-cv-02468-WYD-MEH, 2010 WL 4628767 *8 (D. Colo. Oct. 19, 2010)("Complaining is a

protected activity under Title VII only when the employee complains of discrimination to his

employer."  (citing Peterson v. Utah Dep't of Corrs., 301 F.3d 1182, 1188 (10th Cir. 2002))).

###### ii.    Materially Adverse Employment Action.

A plaintiff must show that the employer subjected the plaintiff to a materially adverse

employment action.  See Proctor v. United Parcel Serv., 502 F.3d at 1208.  An adverse action "is

not limited to discriminatory actions that affect the terms and conditions of employment."

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 64.   "[A] plaintiff must show that a

reasonable employee would have found the challenged action materially adverse, which in this

context means it well might have dissuaded a reasonable worker from making or supporting a charge

of discrimination."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th

Cir. 2010)(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68)(internal quotation

marks omitted).  "The antiretaliation provision protects an individual not from all retaliation, but

from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White, 548

U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant

from trivial harms.").  "We construe the phrase 'adverse employment action' liberally and do not

limit it to 'monetary losses in the form of wages or benefits.'"  Reinhardt v. Albuquerque Pub. Sch.

Bd. of Educ., 595 F.3d at 1133 (quoting Annett v. Univ. of Kan., 371 F.3d at 1239).  Acts that carry

"a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, although "a mere inconvenience or an alteration of job responsibilities will not suffice." Annett v. Univ. of Kan., 371 F.3d at 1239 (internal quotation marks and citation omitted).

In Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008), the Tenth Circuit, in an unpublished opinion, addressed the requirement of a tangible adverse employment action in the context of a disparate-treatment claim where an employee, who had been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment.  Relying on Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999), Anderson argued that the growth plan and formal reprimand rose to the level of an adverse employment action under the law of the Tenth Circuit.  In discussing Anderson v. Clovis Municipal Schools' reliance on Schuler v. City of Boulder, the Tenth Circuit stated: "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit."  MacKenzie v. City and County of Domier, 414 F.3d 1266, 1279 (10th Cir. 2005).  See Heno v. Sprint/United Mgnt. Co., 208 F.3d 847, 857 (10th Cir. 2007)(explaining that Title VII only prescribes discriminatory conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects his [or her] status as an employee.")(quotations omitted).  "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."  Robinson v. Cavalry Portfolio Serv., LLC, 365 F.

-32-

App'x 104, 114 (10th Cir. 2010)(quoting Haynes v. Level 3 Commc'ns, 456 F.3d at 1218-19).

### iii.    A Causal Connection Between the Protected Activity and the Adverse Action.

A plaintiff must show that a causal connection existed between the protected activity and the materially adverse action. See Proctor v. United Parcel Serv., 502 F.3d at 1208. "Causal connection may be established by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1134 (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006)).

Close temporal proximity may give rise to inference of retaliation if adverse action is " very closely connected in time to the protected activity." Piercy v. Maketa, 480 F.3d 1192, 1198 (10th Cir. 2007). A "three-month gap between [a plaintiff's] EEOC complaint and his suspension [i]s too long to establish causation by temporal proximity." Hall v. Interstate Brands Corp., No. 09-3229, 2010 WL 3565741, at *3 (10th Cir. Sept. 15 2010)(citing Hysten v. Burlington N. & Santa Fe Ry., 296 F.3d 1177, 1183-84 (10th Cir. 2002)(three-month gap between protected activity and adverse action was too long to establish causation)). See Meiners v. Univ. of Kan., 359 F .3d 1222, 1231 (10th Cir. 2004)("We have held that 'unless the [adverse action] is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation.'" (quoting Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999))(emphasis original)); Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1217 (10th Cir. 2003)("A five-month gap between a protected activity and an adverse action would ordinarily be too great a time lapse to support an inference of causation based on timing alone" (citation omitted)).

b.     __Burden-Shifting Under__ McDonnell Douglas.

If the plaintiff establishes a prima-facie case for any of his discrimination claims, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision." Mitchell v. City of Wichita, Kan., 140 F. App'x at 777. "Upon the employer's articulation of legitimate, nondiscriminatory reasons . . . the presumption of discrimination established by the prima-facie case simply drops out of the picture." Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000)(quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993)). "[T]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." See Proctor v. United Parcel Serv., 502 F.3d at 1211 (quoting Stoner v. Martinez, 382 F.3d at 1076)(alterations in original).

Once the defendant produces a legitimate, nondiscriminatory explanation for the defendant's action, to survive summary judgment, the plaintiff must establish a genuine question of material fact whether the defendant's explanation is pretextual. To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that the Defendant's "proffered non-discriminatory reason is unworthy of belief." Pinkerton v. Colo. Dept. of Transp., 563 F.3d 1052, 1065 (10th Cir. 2009)(internal quotation marks and citations omitted). To meet this standard, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not

act for the asserted non-discriminatory reasons." <u>Pinkerton v. Colo. Dept. of Transp.</u>, 563 F.3d at 1065 (internal quotation marks and citations omitted). "If a plaintiff advances evidence upon which a factfinder could conclude that the defendant's allegedly nondiscriminatory reasons for the employment decisions are pretextual, the court should deny summary judgment." <u>Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.</u>, 595 F.3d at 1134. "[A] plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. at 148. Consequently, "once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." <u>Bryant v. Farmers Ins. Exchange</u>, 432 F.3d at 1125.

> Debunking one of the employer's explanations defeats the case for summary judgment "only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining."

<u>Jaramillo v. Colo. Judicial Dep't</u>, 427 F.3d 1303, 1310 (10th Cir. 2005)(quoting <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 69 (7th Cir. 1995)).

The Tenth Circuit noted in <u>Tran v. Trustees of State Colleges in Colorado</u>, 355 F.3d 1263 (10th Cir. 2004), that "[t]he pertinent question in determining pretext is not whether the employer was right to think that the employee engaged in misconduct, but whether the belief was genuine or pretextual." 355 F.3d at 1270 (quoting <u>Pastran v. K-Mart Corp.</u>, 210 F.3d 1201, 1206 (10th Cir. 2000)). "The test is good faith belief." <u>McKnight v. Kimberly Clark Corp.</u>, 149 F.3d 1125, 1129 (10th Cir. 1998). "Accordingly, '[i]t is the manager's perception of the employee's performance that

-35-

is relevant, not plaintiff's subjective evaluation of [her] own relative performance.'"  <u>Tran v.</u>
<u>Trustees of State Colleges in Colo.</u>, 355 F.3d at 1270 (quoting <u>Shorter v. ICG Holdings, Inc.</u>, 188
F.3d 1204, 1209 (10th Cir. 1999)).

## ANALYSIS

The Court will grant the Defendant's Motion for Summary Judgment.  Alvarado has not
established a prima-facie case of retaliation under Title VII, because the EEO Complaints occurred
years before his termination, and Alvarado has not produced evidence suggesting that Rariden
retaliated against him because of protected activity.  Moreover, all of Alvarado's claims fail because
the Defendant provides a legitimate, non-discriminatory justification for terminating Alvarado, and
Alvarado has not established a genuine issue of material fact whether the justification is pretext.

## I.      ALVARADO HAS NOT ESTABLISHED A PRIMA-FACIE RETALIATION CASE.

Alvarado has not established a genuine question of material fact whether the Defendant
retaliated against him for engaging in protected activity.  Alvarado contends that the Defendant
retaliated against him in retaliation for his July 8, 1999 Complaint and October 1, 1999 EEO
Complaints, and for his union activity.  The Defendant responds that Alvarado has not presented
evidence that he was removed because of this EEO Complaints and that the EEO Complaints are
too far removed in time from his termination to established a temporal connection.  The Defendant
further contends that union activity is not protected activity under Title VII.  The Court agrees that
Alvarado has not established a genuine question whether he was retaliated against in violation of
Title VII.  For Alvarado's retaliation claim to continue past summary judgment, Alvarado must
come forth with some proof of discrimination, either demonstrating the employer's discriminatory
intent with direct evidence or, "[u]nder <u>McDonnell Douglas</u>, [Alvarado] may survive summary

-36-

judgment by providing circumstantial rather than direct evidence of discrimination." Hall v. Interstate Brands Corp., 2010 WL 3565741, at *4. If Alvarado relies on indirect evidence to survive summary judgment, he must show a material factual dispute exists under the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. at 802. First, because he did not specifically controvert the Defendant's Statement of Undisputed Material Facts, Alvarado is deemed to have admitted that his prior EEO activity did not motivate Rettinger's decision to propose Alvarado's removal, see Motion ¶ 24, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 10, at 3; Notice of Proposed Removal at 1-2, and that Alvarado's EEO activity did not motivate Rariden's decision to remove Alvarado from federal service, see Motion ¶ 28, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 14, at 3. See also D.N.M.LR-Civ. 56.1 ("All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."); Smith v. Ford Motor Co., 626 F.2d at 796 ("[L]ocal rules of practice, as adopted by the district court, 'have the force and effect of law, and are binding upon the parties and the court which promulgated them . . . .'" (quoting Wood Constr. Co. v. Atlas Chem. Indus., Inc., 337 F.2d at 890)); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, at *4 (stating that, under a predecessor rule to D.N.M.LR-Civ. 56.1(b), if a nonmovant fails to comply with the rule, then "the movants' facts will be deemed admitted"). Moreover, even if Alvarado did not admit these facts, his arguments fail on their merits.

## A.    ALVARADO PRESENTS NO DIRECT EVIDENCE OF RETALIATION.

Alvarado presents no direct evidence of retaliation. "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." Hall v. U.S. Dep't of Labor, 476 F.3d at 855. "Direct evidence demonstrates on its face that the employment

decision was reached for discriminatory reasons." Danville v. Reg'l Lab Corp., 292 F.3d at 1249. To meet this demanding standard, Alvarado would have to produce evidence that facially demonstrates he was removed in retaliation for protected activity. Even if the Court were to consider the hearsay testimony that Rariden stated he was going to "work that little Hispanic to the bone," and that "sooner or later I will get that little Hispanic" or "I will get that little Mexican," Response ¶ 28, at 9 (citing Alvarado Depo. at 25-26), these alleged statements would be insufficient because they do not state that Rariden's animosity flowed from Alvarado's EEO Complaints, so a factfinder would be required to make an "inference or presumption" that Rariden sought "to get" Alvarado in retaliation for his protected activity. Hall v. U.S. Dep't of Labor, 476 F.3d at 855. Moreover the statements do not directly relate to the decision to remove Alvarado, so they do not reveal "on [their] face that the employment decision was reached for discriminatory reasons." Danville v. Reg'l Lab Corp., 292 F.3d at 1249.

## B.   ONLY UNION ACTIVITY IN OPPOSITION TO DISCRIMINATION IS PROTECTED ACTIVITY UNDER TITLE VII.

Because Alvarado presents no direct evidence of retaliation, if his claim was to survive on its merits, it must do so under the "burden shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green." Gamez v. Country Cottage Care and Rehab., 377 F. Supp. 2d at 1119 (citing McDonnell Douglas Corp. v. Green, 411 U.S. at 802-804). Under the McDonnell Douglas framework, Alvarado must first set forth a prima-facie case of retaliation. See Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210. To establish a prima-facie case of retaliation, a Alvarado must show: "(1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Proctor

-38-

v. United Parcel Serv., 502 F.3d at 1208 (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202).

Alvarado's union activity is not protected under Title VII, because it was not in protest of discrimination.  Alvarado contends that his role as steward for the Union was protected under Title VII.  See Response at 15.  The Defendant replies that Alvarado's union activities are not protected under Title VII, because they did not relate to protesting discrimination.  See Reply at 10.

A plaintiff must show that he or she engaged in a statutorily protected activity.  See Proctor v. United Parcel Serv., 502 F.3d at 1208.  While filing an EEOC complaint is protected activity, see Anderson v. Coors Brewing Co., 181 F.3d at 1178 ("By filing an EEOC claim, Plaintiff engaged in protected activity."); Stover v. Martinez, 382 F.3d at 1071 ("There is no dispute that [the plaintiff's] EEO complaints are protected activity."), for union activity to be protected under Title VII, it must be in opposition to discrimination, see Malaney v. Elal Israel Airlines, 331 F. App'x at 775 ("Malaney's complaints to her supervisor and union did not include allegations of discrimination or other unlawful employment practices sufficient to demonstrate participation in a protected activity." (citing Wimmer v. Suffolk County Police Dep't, 176 F.3d at 134)); Stucky v. Dep't of Educ., 283 F. App'x at 505 ("The union grievances Stucky filed after 2000 do not qualify as protected activities because the record does not establish that they were lodged in opposition to Title VII violations."); Smith v. Potter, 252 F. App'x at 228 ("The union-grievance hearing was not protected opposition to discrimination and therefore not protected by Title VII."); Tiedeman v. Neb. Dep't of Corrs., 144 F. App'x at 566 ("Thus neither complaint [to a union or a supervisor] is protected because it does not involve a practice 'made an unlawful employment practice' under Title VII . . . ." (citations omitted)); Trujillo v. Burlington N. Santa Fe R.R., 2010 WL 4628767 *8 ("Complaining is a

protected activity under Title VII only when the employee complains of discrimination to his employer."  (citing Peterson v. Utah Dep't of Corrs., 301 F.3d at 1188)).

Alvarado does not put forth evidence suggesting that his union activity related to protesting discrimination.  On the contrary, Alvarado's Material Facts state that he protested the rating system because the new standards violated the CBA.  See Response ¶ 16, at 6 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); Alvarado Depo. at 45:20-46:10, 66:17-23.  See Demand to Bargain at 1.  The Union's Demand to Bargain does not address discrimination prohibited under Title VII; rather, it "submits the following proposals for negotiations":

> 1. The Reject System will comply with established Performance Management System requirements.
>
> 2. The Reject System will be used and enforced for all civilian and military employees with 377 TRANS (to include supervisory and subordinant) employees.
>
> 3. The Reject System cannot be the sole or controlling factor used to rate employees.
>
> 4. What governing factors, statute, CFR, OPM regulations were used to establish this policy.
>
> 5. The Reject System must permit the accurate evaluation of job performance on the basis of objective criteria and will be fair, reasonable, equitable and job-related.
>
> 6. Define the Reject System and it's compliance or use as a critical component of an employee's rating.
>
> 7. Re-Write of Performance plans to reflect the Reject System.
>
> 8. Employees input to the use of this Reject System.

Demand to Bargain at 1.

Alvarado testifies that his union activities consisted of serving as steward for the Union, filing unfair labor practice claims against the Base, and addressing issues pertaining to the CBA. These allegations do not suggest that Alvarado was protesting discrimination under Title VII.  The

Court concludes, therefore, that Alvarado has not put forward evidence suggesting his union activity was "protected opposition to discrimination," and therefore Alvarado's union activity is "not protected by Title VII." Smith v. Potter, 252 F. App'x at 228.

### C.   ALVARADO HAS NOT SHOWN A CAUSAL CONNECTION BETWEEN HIS PROTECTED ACTIVITY AND HIS REMOVAL.

Alvarado has not shown a causal connection between his EEO Complaints and his discipline and termination in 2002.  The Defendant contends that Alvarado has not established a genuine question that a causal connection existed between Alvarado's protected activity and his removal. Alvarado responds that Hofman testified that "Rariden became very frustrated with the Plaintiff because his Union and EEO activities took up a lot of his time in doing paperwork."  Response at 15.  Alvarado also contends that Rettinger's proposal that Alvarado be removed and Rariden's decision to remove Alvarado because of "minor defects in the Plaintiff's inspection is an indicator that the Plaintiff was being punished for his labor and EEO activities, and not for his performance." Response at 17.

To establish a prima-facie retaliation case, Alvarado must show "that a causal connection existed between the protected activity and the materially adverse action."  Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202). "Causal connection may be established by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1134 (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d at 1228).  While Alvarado puts forward evidence that his union activity frustrated Rariden, because the activity required Rariden to complete paperwork and devote time to the demands, see MSRB Transcript 169:16-22 (Hofman), and that Rariden pressured Alvarado's

supervisors to give him lower performance ratings, see Alvarado Depo. at 152:5-153:1, Alvarado

puts forward no evidence that suggests that his EEO Complaints influenced Rariden's behavior

towards him, see MSRB Transcript 169:10-14 (Hofman)(testifying that Rariden's was not frustrated

about Alvarado's EEO Complaint, "because he really didn't have anything to do with it, other than

it was happening as he was taking over.  But [Rariden] wasn't involved in it in any way.").

Moreover, the Court is also not convinced that removing Alvarado for "minor defects" shows

a causal connection.  Alvarado provides no legal authority for his contention that removing him for

"minor defects in the Plaintiff's inspection is an indicator that the Plaintiff was being punished for

his . . . EEO activities, and not for his performance."  Response at 17.  While this argument may

support establishing pretext, an outsized reaction to Alvarado's failings does not indicate that

Rariden was retaliating against Alvarado for a three-year-old EEO Complaint.  There is not an

adequately close temporal connection to support an inference of a causal connection between

Alvarado's EEO Complaints and his removal.  Temporal proximity may give rise to inference of

retaliation if adverse action is " very closely connected in time to the protected activity."  Piercy v.

Maketa, 480 F.3d at 1198.  A "three-month gap between [a plaintiff's] EEOC complaint and his

suspension [i]s too long to establish causation by temporal proximity."  Hall v. Interstate Brands

Corp., 2010 WL 3565741, at *3 (citing Hysten v. Burlington N. & Santa Fe Ry., 296 F.3d at

1183-84 (three-month gap between protected activity and adverse action was too long to establish

causation)), see Meiners v. Univ. of Kan., 359 F .3d at 1231 ("We have held that 'unless the

[adverse action] is very closely connected in time to the protected activity, the plaintiff must rely

on additional evidence beyond mere temporal proximity to establish causation.'" (quoting Anderson

v. Coors Brewing Co., 181 F.3d at 1179)(emphasis original)); Wells v. Colo. Dep't of Transp., 325

-42-

F.3d at 1217 ("A five-month gap between a protected activity and an adverse action would ordinarily be too great a time lapse to support an inference of causation based on timing alone" (citation omitted)).  More than three years passed between Alvarado's second EEO Compliant in October 1, 1999, and Alvarado's removal on October 21, 2002, during which time Alvarado did not file any complaints of discrimination against the Defendant.  See Motion ¶ 31, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Alvarado Depo. at 18-19.  Therefore, temporal proximity does not support inferring causation.  Some evidence is needed to infer the required causal connection, and there is nothing more.  In sum, even if Alvarado had not been deemed to have admitted that the Defendant did not retaliate against him because of his EEO Complaints, he does not succeed in establishing a prima-facie retaliation case.

## II.   THE DEFENDANT PROVIDES A LEGITIMATE, NON-DISCRIMINATORY JUSTIFICATION FOR TERMINATING ALVARADO, AND ALVARADO DOES NOT ESTABLISH THAT A GENUINE QUESTION OF MATERIAL FACT EXISTS WHETHER THE JUSTIFICATION IS PRETEXT.

While Alvarado fails to establish a prima-facie retaliation case, "[f]or the purposes of this motion only, Defendant concedes that Plaintiff can establish prima facie claims of race and national origin discrimination."  Motion at 8 n.1.  Because of this concession, "the burden shifts to the [D]efendant to come forward with a legitimate nondiscriminatory reason for its employment related decision."  Mitchell v. City of Wichita, Kan., 140 F. App'x at 777.  "Upon the employer's articulation of legitimate, nondiscriminatory reasons . . . the presumption of discrimination established by the prima-facie case simply drops out of the picture."  Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted).  The Defendant's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. at 142)(quoting St. Mary's Honor Center v. Hicks, 509 U.S. at 510).

"[T]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." See Proctor v. United Parcel Serv., 502 F.3d at 1211 (quoting Stoner v. Martinez, 382 F.3d at 1076)(alterations in original).

### A.   THE DEFENDANT PROVIDES A LEGITIMATE, NON-DISCRIMINATORY JUSTIFICATION FOR TERMINATING ALVARADO.

The Defendant has established a legitimate, non-discriminatory justification for terminating Alvarado.  In April 2000, Rariden modified the Civilian Performance Plans -- AF Form 860 -- for all WG and WL vehicle maintenance workers in the Flight, increasing the number of allowable work order rejects from six to twelve per year.  See Motion ¶ 6, at 2 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rariden Decl. ¶ 3, at 1.  Rariden modified the Plans in response to ever-changing vehicle design and vehicle complexity, to allow for greater flexibility for evaluating employees, and to improve employee performance and their ability to meet or exceed applicable critical performance elements.  See Motion ¶ 7, at 2 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rariden Decl. ¶ 3, at 1.

The modification was effective for the 2000-2001 appraisal period.  See Motion ¶ 8, at 3 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rariden Decl. ¶ 3, at 1.  During the 2001-2002 appraisal performance rating period ending March 31, 2002, Alvarado received fourteen rejects.  See Motion ¶ 9, at 3 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Rettinger Decl. ¶ 3, at 1.  Although Alvarado exceeded the number of allowable rejects, Rettinger gave Alvarado a rating of "Excellent," the second highest rating obtainable.  See Motion ¶ 10, at 3 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 3, at 1.

-44-

During the first two-and-one-half months of the 2002 to 2003 appraisal period, Alvarado incurred twelve rejects.  See Motion ¶ 11, at 3 (setting forth this fact); Response at ¶ 19, at 7 (setting forth this fact); Rettinger Decl. ¶ 3, at 1; Notice of Opportunity Period at 1.  Because of his rejects, on June 20, 2002, Alvarado was placed on a thirty-day opportunity period.  See Motion ¶ 12, at 3 (setting forth this fact); Response ¶ 15, 35, at 6, 10-11 (admitting this fact); id. ¶ 19, at 7 (setting forth this fact); Rettinger Decl. ¶ 4, at 1; Notice of Opportunity Period at 1.  The purpose of the opportunity period was to allow Alvarado to demonstrate that he could perform acceptably.  See Motion ¶ 13, at 3 (setting forth this fact); Response ¶ 15, 35, at 6, 10-11 (admitting this fact); Rettinger Decl. ¶ 4, at 2; Notice of Opportunity Period at 1.  During the opportunity period, Alvarado was afforded four additional rejects.  See Motion ¶ 14, at 3 (setting forth this fact); Rettinger Decl. ¶ 4, at 2; Notice of Opportunity Period at 1.

On July 18, 2002 -- during the opportunity period -- Alvarado inspected and passed an aircraft refueling truck in the shop for scheduled maintenance and annual inspection.  See Motion ¶ 17, at 3 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 7, at 2.  That same day, Rariden inspected the aircraft refueling truck and identified six rejects:

    a. Annual opacity test was not circled on Annual Inspection Checklist;

    b. Paint battery box not initialed on the R-11 Preventive Maintenance Checklist;

    c. Battery terminals were corroded, Sch Maint. Checklist Item # 9;

    d. Battery box/compartment not painted, Sch Maint. Checklist Item # 9;

    e. Windshield washer inoperative, Sch Maint. Checklist Item # 4; and,

    f. Ether bottle empty (previously discussed ether bottle replacement with Alvarado).

Motion ¶ 18, at 3-4.  See Response ¶ 22, at 7 (setting forth this fact); Rariden Decl. ¶ 7, at 2.  As a consequence, Alvarado incurred six rejects during the opportunity period -- two more than he was permitted.  See Motion ¶ 19, at 4 (setting forth this fact); Response ¶ 23, at 8 (setting forth this fact); Rettinger Decl. ¶ 5, at 2.  Rariden's July 18, 2002 inspection of the aircraft refueling truck occurred three days before the end of Alvarado's opportunity period.  See Response ¶ 24, at 8 (setting forth this fact); Reply at 2-7 (not specifically controverting this fact); Notice of Opportunity Period at 1.

Because of the rejects on the aircraft refueling truck, Alvarado failed the opportunity period.  See Motion ¶ 21, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 6, at 2; Notice of Failure at 1.  After the conclusion of the opportunity period, Alvarado incurred eighteen additional rejects, making twenty-four rejects in all.  See Motion ¶ 20, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 6, at 2.

On September 6, 2002, Rettinger issued a Notice of Proposed Removal to Alvarado.  See Motion ¶ 22, at 4 (setting forth this fact); Response ¶ 27, at 8-9 (setting forth this fact); Rettinger Decl. ¶ 8, at 2; Notice of Proposed Removal.  Rettinger "decided to propose removal [of Alvarado] from the Agency because of alleged discrepancies before and during the opportunity period, and also, for another incident where a television was on in the workplace at the Customer Care Center during a time the Plaintiff was on duty."  Response ¶ 25, at 8.  See Motion ¶ 23, at 4 ("Rettinger proposed Plaintiff's removal based solely on the reasons articulated in the [Notice of Proposed Removal].");  Rettinger Decl. ¶ 8, at 2; Notice of Proposed Removal.  Alvarado has not presented evidence that his race, national origin, or prior EEO activity motivated Rettinger's decision to propose Alvarado's removal.  See Motion ¶ 24, at 4 (setting forth this fact); Response at 3-11 (not

specifically controverting this fact); Rettinger Decl. ¶ 10, at 3; Notice of Proposed Removal at 1-2.

Rariden was the deciding official for the proposed action.   See Motion ¶ 25, at 4 (setting

forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 1, at 1.

On October 21, 2002, Rariden issued a Notice of Decision to Remove, removing Alvarado from

federal service for: (i) insubordinate defiance of authority and failure to comply with minimum

standards of conduct, which Alvarado's careless workmanship, certification of inaccurate

information on inspection checklists and misuse of government equipment demonstrated; (ii)

twenty-four rejects between April and September of 2002, including "obvious defects" that indicated

Alvarado may not have looked at the vehicle when he certified that it passed inspection and may

have resulted in "serious safety problems" had the vehicle been released; (iii) many of the rejects

occurred after Alvarado was counseled on his "careless workmanship and given opportunity to

improve"; and (iv) Alvarado's previous disciplinary record, which included a fourteen day

suspension for making personal long distance telephone calls on a government phone.  See Motion

¶ 27, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden

Decl. ¶ 13, at 3.  Alvarado did not specifically controvert that his race, national origin, or prior EEO

activity did not motivate Rariden's decision to remove Alvarado from federal service.  See Motion

¶ 28, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden

Decl. ¶ 14, at 3.  The Court concludes, therefore, that the Defendant has established a legitimate,

non-discriminatory justification for removing Alvarado from federal service.

## B.   ALVARADO FAILS TO SHOW THAT THE DEFENDANT'S JUSTIFICATION IS PRETEXT.

Because the Defendant produced a legitimate, nondiscriminatory explanation for his action,

to survive summary judgment, Alvarado must establish a genuine question of material fact whether

the Defendant's explanation is pretextual.  To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that the Defendant's "proffered non-discriminatory reason is unworthy of belief."  Pinkerton v. Colo. Dept. of Transp., 563 F.3d at 1065 (internal quotation marks and citations omitted).  To meet this standard, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Pinkerton v. Colo. Dept. of Transp., 563 F.3d at 1065 (internal quotation marks and citations omitted).  "If [Alvarado] advances evidence upon which a factfinder could conclude that the defendant's allegedly nondiscriminatory reasons for the employment decisions are pretextual, the court should deny summary judgment."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1134.  Consequently, if Alvarado "presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, [the Court] presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." Bryant v. Farmers Ins. Exchange, 432 F.3d at 1125.

> Debunking one of the employer's explanations defeats the case for summary judgment "only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining."

Jaramillo v. Colo. Judicial Dep't, 427 F.3d at 1310 (quoting Russell v. Acme-Evans Co., 51 F.3d at 69).

Alvarado's arguments that the Defendant's justification is pretext fail on their merits. Alvarado contends that: (i) he was treated differently than "other employees who were not Hispanic," Response at 12; (ii) Rariden scrutinized his performance ratings and the ratings of other

Hispanic workers more closely than non-Hispanics, <u>see</u> Response ¶ 31, at 9-10; (iii) the rejects were based on discrepancies that were "minor, or . . . were not discrepancies at all," Response ¶ 23, at 8; and (iv) Rariden made a racial joke, <u>see</u> <u>id.</u> at 12.[12]   On the first allegation, Alvarado asserts that, "[d]uring 2001 and 2002, other, non-Hispanic employees had similar amounts of rejects but were not placed on an opportunity period."   Response ¶ 36, at 11 (citing Alvarado Depo. at 37, 38, 55, 56, 58-60, 118-120).   In the cited testimony, Alvarado refers to Whitlock and Jiron.   The Defendant contends that Alvarado's argument fails, because the record does not support his allegations and Whitlock and Jiron and not similarly situated.

_____

[12] Alvarado makes other arguments based on inadmissible hearsay.  In Material Fact No. 28, Alvarado alleges that, during the time before and near his removal, he learned from other employees that Rariden had made derogatory remarks about Alvarado's race and had stated that he was going to "work that little Hispanic to the bone," and that "sooner or later I will get that little Hispanic" or "I will get that little Mexican."  Response ¶ 28, at 9 (citing Alvarado Depo. at 25-26).  In Material Fact No. 34, Alvarado alleges that Neddo and Hage "informed the Plaintiff that they were instructed by Mr. Rettinger to give Plaintiff lower performance ratings than he deserved, and . . . that Mr. Rariden was out to get him."  Response ¶ 34, at 10.  Again, the Court may not consider inadmissible hearsay on a motion for summary judgment.  "[A] third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill."  <u>Gross v. Burggraf Constr. Co.</u>, 53 F.3d at 1541.  <u>See</u> <u>Starr v. Pearle Vision, Inc.</u>, 54 F.3d at 1555 ("Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment."); <u>Riggs v. Airtran Airways, Inc.</u>, 497 F.3d at 1121 ("[H]earsay testimony is inadmissible 'in support of, or opposition to, summary judgment.'" quoting <u>Starr v. Pearle Vision, Inc.</u>, 54 F.3d at 1555); <u>Young v. Dillon Cos., Inc.</u>, 468 F.3d at 1252 (holding that statements revealing "repugnant racial animus" were inadmissible because they were "allegedly made to other employees and . . . conveyed, second-hand, to" the plaintiff).  Alvarado's contention that the hearsay can be converted into trial testimony is unavailing.  <u>See</u> Response at 11.  The Tenth Circuit considered and rejected this argument in <u>Johnson v. Weld County Colorado</u>.  "When a proper hearsay objection has been made and preserved, '[i]t is well settled in this circuit that [a court] can consider only admissible evidence . . . [on] summary judgment.'" <u>Johnson v. Weld County Colorado</u>, 594 F.3d at 1209 (quoting <u>Wright-Simmons v. City of Oklahoma City</u>, 155 F.3d at 1268; <u>Gross v. Burggraf Constr. Co.</u>, 53 F.3d at 1541).  <u>See</u> <u>Montes v. Vail Clinic, Inc.</u>, 497 F.3d at 1176 ("Under our precedents, we are constrained to disregard such hearsay on summary judgment when, as here, there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule.").  The Court, therefore, will not consider Alvarado's arguments based on hearsay evidence.

The Court agrees that Alvarado's allegations fail to establish pretext.  An employee may "show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness."  Glover v. NMC Homecare, Inc., 13 F. App'x 896, 907 (10th Cir. 2001)(quoting Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1232)(internal quotation marks omitted).  See Clayton v. Vanguard Car Rental U.S.A., Inc., No. CIV 09-0188 JB/ACT, 2010 WL 5476787, at *29 n.52 (D.N.M. Dec. 9, 2010)(Browning, J.)(stating a nonmovant can "create an inference of pretext . . . [by] showing disparate treatment between comparable individuals." (citation omitted)).  Alvarado's contention that Whitlock and Jiron had similar numbers of rejects as Alvarado, but were not placed on an opportunity period is unavailing because the record does not support it, and Whitlock and Jiron are not similarly situated.  The record does not support Alvarado's contention that Whitlock exceeded the permissible number of rejects during 2001 and 2002.  Whitlock's performance apprisal for 2001 to 2002 states that his "[r]ejects [were] below allowable number per rated year."  Civilian Performance and Promotion Appraisal Performance Rating for Larry T. Whitlock at 2 (dated June 1, 2002), filed December 6, 2010 (Doc. 45-4, Ex. 5, at 4).  See Rariden Decl. ¶ 15, at 4 ("[D]uring the 2001-2002 rating period, Mr. Whitlock did not exceed the number of allowable rejects as indicated by his appraisal . . . .").  Addtionally, Alvarado does not know if Whitlock was disciplined.  See Alvarado Depo. at 58:13-59:1.

Moreover, Whitlock was not similarly situated to Alvarado because he had a different supervisor.  See Williams v. Solvay Chemicals Inc., 385 F. App'x 820, 827 (10th Cir. 2010)("[T]hat employee had different supervisor tends to undermine pretext claim based on differential treatment of allegedly similarly-situated employees."  (citing Timmerman v. U.S. Bank, N.A., 483 F.3d 1106,

1121 (10th Cir. 2007))); McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006)("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." (quoting Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)); Green v. New Mexico, 420 F.3d 1189, 1195 (10th Cir. 2005)(rejecting plaintiff's argument that employees were similarly situated, because they had different supervisors). Whitlock's reported to Jiron, whereas Alvarado reported to Rariden. See Alvarado Depo. 57:17-20; Rariden Decl. ¶ 15, at 4. Because Whitlock did not exceed the number of permissible rejects and has a different supervisor, the Court concludes he is not similarly situated.

Nor was Jiron similarly situated to Alvarado. Unlike Alvarado, who was an inspector, Jiron was a supervisor. See Alvarado Depo. at 56:2-3; Rariden Decl. ¶ 16, at 4. While Alvarado does not know if Jiron was disciplined, see Alvarado Depo. at 58:13-59:1, Jiron was not a bargaining unit employee, nor covered under the CBA, and consequently he was immediately disciplined with a written reprimand without the benefit of an opportunity period. See Rariden Decl. ¶ 16, at 4; Decision to Reprimand (dated August 2, 2002), filed December 6, 2010 (Doc. 45-4, Ex. 7, at 8). Thus, Alvarado has not presented evidence "that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness." Glover v. NMC Homecare, Inc., 13 F. App'x 896, 907 (10th Cir. 2001)(quoting Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1232 (internal quotation marks omitted).

Moreover, even if Whitlock and Jiron were similarly situated, both had exceeded the number of allowable rejects, and neither not been disciplined "[d]uring 2001 and 2002," Response ¶ 36, at 11, it is unclear that would establish pretext. During the 2001-2002 appraisal performance, Alvarado received fourteen rejects, exceeding the number allowed, see Motion ¶ 9, at 3 (setting forth this

fact); Response ¶ 14, at 6 (admitting this fact); Rettinger Decl. ¶ 3, at 1, and despite exceeding the number of allowable rejects, Rettinger gave Alvarado a rating of "Excellent," the second highest rating obtainable, and Alvarado was not placed on an opportunity period. Motion ¶ 10, at 3 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 3, at 1. Thus, Alvarado's conention that Whitlock and Jiron were not placed on an opportunity period for excessive rejects "[d]uring 2001 and 2002" appears to be beside the point. It was not until Alvarado incurred twelve rejects in the first two-and-one-half months of the 2002 to 2003 appraisal period that he was placed on an opportunity period. See Motion ¶¶ 11, 12, at 3 (setting forth this fact); Response ¶ 15, 35, at 6, 10-11 (admitting this fact); id. ¶ 19, at 7 (setting forth this fact); Rettinger Decl. ¶¶ 3, 4, at 1; Notice of Opportunity Period at 1.

Rariden's second argument, that Rariden scrutinized his performance ratings and the ratings of other Hispanic workers more closely than non-Hispanics, is also unavailing. First, Alvarado was not terminated for his performance rating. Second, while Alvarado presents evidence that Rariden scrutinized Alvarado's job performance "a little more so than some of the other employees," and, during annual reviews, Rariden "would look pretty hard at" Alvarado's ratings, and Rariden would speak to Alvarado's "supervisors if he felt that the ratings were too high," MSRB Transcript at 167:11-22 (Hofman), and that Rariden pressured Alvarado's supervisors to give him lower performance ratings, see Alvarado Depo. at 152:5-153:1, Alvarado does not present evidence that Rariden's scrutiny of his performance ratings worked to Alvarado's detriment or was based on racial animus. In the particular incident to which Alvarado points, Rariden, in response to Hage "sp[eaking] highly of Mr. Alvarado's performance" and giving "Alvarado a 'high rating,'" MSRB Transcript at 168:7-10 (Hofman), had "long conversations" with Hage, trying to convince him that

Alvarado' rating "should have been lower."  MSRB Transcript at 168:11-16 (Hofman).  Hage, however, ultimately gave Alvarado a rating of "Superior," the highest available rating.  MSRB Transcript at 187:21-23.  Before 1998, when Rariden was promoted to a position above Alvarado, Alvarado's previous supervisors gave Alvarado performance evaluation rating of good to excellent -- the second and third highest ratings.  <u>See</u> Response ¶ 33, at 10 (setting forth this fact); Reply at 6 (admitting this fact).  From 1998 to 2002, after Rariden was promoted, Alvarado was rated excellent and superior -- the highest and second highest ratings.  <u>See</u> Motion ¶ 9, at 3 (setting forth this fact); Response ¶ 14, at 6 (admitting this fact); Reply (setting forth this fact); Rettinger Decl. ¶ 3, at 1; Alvarado Depo. at 74:16-21, 152:1-156:3.

Moreover, Alvarado bases this argument largely on Hofman's testimony, and Hofman testified that Rariden also appeared to look at  Rael's, Jiron's, and Luero's performance ratings "pretty closely, and if [Rariden] felt they were rated too highly . . . he would have the supervisors in for a discussion."  Alvarado Depo. at 180:1-4.  Jiron is Native American, and not Hispanic.[13] Hofman further testified that he did not "feel that [Rariden] treated people differently based on skin color,"  MSRB Transcript at 181:6-7 (Hofman), and that Rariden's scrutiny of the rating Hage assigned Alvarado was based on "Rariden's perception of the quality of [Alvarado's] work, or timeliness," and because Hage was only Alvarado's supervisor for part of the year, and Alvarado had preformed differently for the previous supervisor.  MSRB Transcript at 196:6-14 (Hofman).  Consequently, the Court concludes that Rariden's scrutiny of Alvarado ratings does not create a genuine question whether Rariden's reasons for removing Alvarado are pretextual.

---

[13] Jiron is also an employee Alvarado contends was similarly situated, but "not given the same close scrutiny at work or the discipline as was given to the Plaintiff."  Response at 12.

Alvarado's third argument that the rejects were based on discrepancies that were "minor, or . . . were not discrepancies at all," Response ¶ 23, at 8, is also unavailing.  As the Tenth Circuit noted in <u>Tran v. Trustees of State Colleges in Colo.</u>, "[t]he pertinent question in determining pretext is not whether the employer was right to think that the employee engaged in misconduct, but whether the belief was genuine or pretextual."  355 F.3d at 1270 (quoting <u>Pastran v. K-Mart Corp.</u>, 210 F.3d at 1206).  "The test is good faith belief."  <u>McKnight v. Kimberly Clark Corp.</u>, 149 F.3d at 1129. "Accordingly, '[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance.'"  <u>Tran v. Trustees of State Colleges in Colo.</u>, 355 F.3d at 1270 (quoting <u>Shorter v. ICG Holdings, Inc.</u>, 188 F.3d at 1209).  Alvarado does not present evidence that creates a genuine question whether Rariden believed that the charges were significant, and not minor nor non-existent.  <u>See</u> Rariden Decl. ¶¶ 7-8, at 2-3 (stating the rejects suggested that Alvarado had not inspected the vehicle, but just signed off on the paper work, and involved an item Rariden had repeatedly addressed with Alvarado).  Alvarado testified, on the contrary, that he was not aware of any facts suggesting Rariden did not have a good-faith belief that the rejects were legitimate:

> Q. Are you aware of any facts that would suggest that Mr. Rariden didn't honestly believe that these were rejections?
>
> A. No. I don't know what be would be thinking.
>
> Q. Would you be aware of any facts to suggest that Mr. Rariden didn't honestly believe that these were legitimate rejections?
>
> A. No. I can't speak for him.

Alvarado Depo, at 114:15-22.  Because Alvarado admits he does not have evidence suggesting that Rariden did not believe the rejects were serious, he has not established a question whether Rariden

had "a good faith belief." McKnight v. Kimberly Clark Corp., 149 F.3d at 1129. Alvarado,

consequently, has not shown pretext based on the discrepancies being "minor, or . . . not

discrepancies at all." Response ¶ 23, at 8. See, e.g., Osornio v. T-Mobile USA, Inc., 182 F. App'x

834, 837-38 (10th Cir. 2006)("Because it is uncontroverted that T-Mobile decisionmakers did not

believe a rigid policy existed, 'even if the failure to [follow procedure] was a mistake, it was not

pretextual.'" (quoting Randle v. City of Aurora, 69 F.3d 441, 455 (10th Cir. 1995))); Kendrick v.

Penske Trans. Servs., Inc., 220 F.3d 1220 (10th Cir. 2000)(finding no pretext where undisputed

evidence shows that a manager decided to terminate the plaintiff based on the manager's belief that

the plaintiff pushed and verbally abused a person, even though the incident may not have occurred);

McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998)(finding that plaintiff

failed to establish pretext where the defendant discharged plaintiff after conducting an investigation

into a an employee's allegations of sexual misconduct on the part of the plaintiff and believed the

allegations to be true, even though plaintiff presented evidence to the district court that the

allegations may have been false); EEOC v. Flasher Co., Inc., 986 F.2d 1322, 1312 n. 12 (10th Cir.

1992)("[A] mistaken belief can be a legitimate reason for an employment decision and is not

necessarily pretextual.").

Finally, Alvarado's fourth argument, that Rariden's alleged racial joke shows pretext, fails

for the reasons Alvarado states in his Response:

> The racial comments and jokes by Mr. Rariden, standing alone, do not provide a
> basis for a finding of employment discrimination. Evidence of racial comments is
> not probative of discrimination unless it is linked to relevant personnel actions. See
> Figures v. Board of Pub. Utils., 967 F.2d 357, 360-61 (10th Cir.1992). Although
> discriminatory remarks that refer directly to the plaintiff may support an inference
> of discrimination, the plaintiff must establish a nexus between the discriminatory
> remarks and the employment decision. See Cone v. Longmont United Hosp. Ass'n,
> 14 F.3d 526, 531 (10th Cir.1994).

Response at 13.  Alvarado, however advances no admissible evidence to establish a nexus between Rariden's alleged racial joke and Alvarado's removal.  By his own testimony, Alvarado heard only Rariden make a joke using the term "Mexican."  Alvarado Depo. at 47:25-53:3.  Alvarado did not hear the punchline, id. at 52:1-2, or know if a nationality was the recipient of the punch line, id. at 53:1-3; Alvarado "walked out and left as soon as [Rariden] started," id. at 52:10-11.  To demonstrate a nexus between the joke Alvarado's removal, Alvarado must show that "the allegedly discriminatory comments were directed at [him], h[is] position, or the defendant's policy which resulted in the adverse action taken against the plaintiff."  Young v. Dillon, 468 F.3d at 1253 (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994); citing English v. Colo. Dep't of Corr., 248 F.3d 1002, 1010 (10th Cir. 2001)).  Alvarado makes no such showing, presenting only his testimony that Rariden made a joke using the term "Mexican," and not that the joke was directed at him, his position, or the reject system.  In sum, Alvarado has not established a genuine question of material fact whether the Defendant's justification for removing Alvarado from federal service was pretext.

Moreover, because Alvarado failed to specifically controvert the Defendant's Statement of Undisputed Material Facts, Alvarado is deemed to have admitted that "Rettinger's decision to propose Plaintiff's removal was not motivated to any extent by Plaintiff's race, national origin, or prior EEO activity," see Motion ¶ 24, at 4 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rettinger Decl. ¶ 10, at 3; Notice of Proposed Removal at 1-2, and that "Rariden's decision to remove Plaintiff from federal service was not motivated to any extent by Plaintiff's race, national origin, or prior EEO activity," see Motion ¶ 28, at 5 (setting forth this fact); Response at 3-11 (not specifically controverting this fact); Rariden Decl. ¶ 14, at 3.  See also

D.N.M.LR-Civ. 56.1 ("All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."); Smith v. Ford Motor Co., 626 F.2d at 796 (10th Cir. 1980)("[L]ocal rules of practice, as adopted by the district court, 'have the force and effect of law, and are binding upon the parties and the court which promulgated them . . . .'" (quoting Wood Constr. Co. v. Atlas Chem. Indus., Inc., 337 F.2d at 890)); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, at *4 (stating that, under a predecessor rule to D.N.M.LR-Civ. 56.1(b), if a nonmovant fails to comply with the rule, then "the movants' facts will be deemed admitted"). Consequently, Alvarado has admitted that the Defendant's justification is not pretext.

In sum, Alvarado failed to specifically controvert the Defendant's Statement of Undisputed Material Facts, and thereby is deemed to have admitted them. As a consequence, he admits that Alvarado's race, national origin, and prior EEO activity did not motive the Defendant's decision to terminate Alvarado. Setting his admissions aside, Alvarado's arguments fail on their merits, because Alvarado has not established a prima-facie retaliation case, nor has he shown that the Defendant's justification is pretext. The Court, therefore, grants the Defendant's Motion for Summary Judgment.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, filed December 6, 2010 (Doc. 44), is granted.

_____
UNITED STATES DISTRICT JUDGE

-57-

*Counsel:*

Dennis W. Montoya
Montoya Law, Inc.
Rio Rancho, New Mexico

   *Attorney for the Plaintiff*

Kenneth J. Gonzales
   United States Attorney
Michael H. Hoses
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Defendant*